IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KELLY PINN INDIVIDUALLY AND ON BEHALF OF SIMILARLY SITUATED PERSONS, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:23-cv-01208-Y |
| HUFSEY HOME SERVICES, INC. D/B/A ONE HOUR AIR CONDITIONING & HEATING AND 33 MILE RADIUS, LLC D/B/A EVERCONNECT, | § § § § § | |
| Defendants. | § § § | |

### DEFENDANT HUFSEY HOME SERVICES, INC. D/B/A ONE HOUR AIR CONDITIONING & HEATING'S MOTION TO DISMISS

Joseph F. Cleveland, Jr.
jcleveland@belaw.com
Texas State Bar No. 04378900
Angélique M. McCall
amccall@belaw.com
Texas State Bar No. 24104172

BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, TX  76102-3090
(817) 338-1700
(817) 870-2265 Fax

ATTORNEYS FOR DEFENDANT
HUFSEY HOME SERVICES, INC.
D/B/A ONE HOUR AIR
CONDITIONING & HEATING

## <u>TABLE OF CONTENTS</u>

I.      Introduction ..........................................................................................................1

II.     Argument & Authorities ......................................................................................1

        A.      Legal Standards.........................................................................................1

        B.      Pinn makes conclusory and contradicting allegations that prevent this Court from drawing a reasonable inference that Hufsey is liable for the conduct alleged ........................................................................................................3

        C.      Pinn fails to plausibly state a claim under 47 U.S.C. § 227(b) or 47 CFR § 16.1200.....................................................................................................6

        D.      47 U.S.C. § 227(c) is not triggered because Pinn did not receive more than one call from Hufsey and Pinn does not allege Hufsey made any solicitations ...............................................................................................9

        E.      Pinn fails to plead facts supporting direct or vicarious TCPA Liability...............10

                i.      Pinn fails to plead facts supporting Hufsey's direct liability....................10

                ii.     Pinn fails to plead facts supporting Hufsey's vicarious liability ..............11

        F.      Pinn fails to plausibly allege that the TCPA violations were negligent, willful or made knowingly.......................................................................15

        G.      Pinn fails to state a claim under TEX. BUS. & COM. CODE § 302.101 .................15

        H.      Pinn lacks standing to assert her claims................................................16

CONCLUSION...................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................1, 2

*Barker v. Sunrun Inc.*,
   2019 WL 1983291 (D.N.M. Apr. 29, 2019) ........................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................1, 2, 15

*Callier v. Nat'l United Group, LLC*,
   2022 WL 20046134 (W.D. Tex. Jan. 26, 2022) ..................................................16

*Callier v. SunPath Ltd.*,
   2020 WL 10285659 (W.D. Tex. Aug. 10, 2020) .................................................11

*Christiana Tr. v. Riddle*,
   911 F.3d 799 (5th Cir. 2018) ..............................................................................11

*Clark v. Avatar Techs. Phl, Inc.*,
   2014 WL 309079 (S.D. Tex. Jan. 28, 2014) .......................................................17

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ................................................................................2

*Crooks v. Moses*,
   138 S.W.3d 629 (Tex. App.—Dallas 2004, no pet.)............................................11

*Cunningham v. Kondaur Capital*,
   2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014) .................................................13

*Cunningham v. Lifestyles Dev., LLC*,
   2019 WL 4282039 (E.D. Tex. Aug. 8, 2019) ..................................................7, 12

*Cunningham v. Nationwide Sec. Sols., Inc.*,
   2017 WL 10486988 (N.D. Tex. Nov. 2, 2017).......................................................7

*Cunningham v. Politi*,
   2019 WL 2519568 (E.D. Tex. Apr. 30, 2019) .....................................................10

*Cunningham v. TechStorm, LLC*,
   2017 WL 721079 (N.D. Tex. Feb. 23, 2017)..........................................................9

*Disney Enterprises, Inc. v. Esprit Fin., Inc.*,
   981 S.W.2d 25 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.)..............13, 14

*Facebook, Inc. v. Duguid*,
 592 U.S. 395 (2021)..........................................................................................7

*Ferrer v. Chevron Corp.*,
 484 F.3d 776 (5th Cir. 2007) ............................................................................2

*Freidman v. Massage Envy Franchising, LLC*,
 2013 WL 3026641 (S.D. Cal. June 13, 2013)..................................................18

*In re Great Lakes Dredge & Dock Co. LLC*,
 624 F.3d 201 (5th Cir. 2010) ............................................................................2

*Hicks v. Alarm.com Inc.*,
 2020 WL 9261758 (E.D. Va. Aug. 6, 2020)................................................17, 18

*Horton v. Nat'l Republican Senatorial Comm.*,
 2023 WL 372066 (N.D. Tex. Jan. 23, 2023) ...................................................14

*Humble Nat'l Bank v. DCV, Inc.*,
 933 S.W.2d 224 (Tex.App.—Houston [14th Dist.] 1996, writ denied)...................14

*Hunsinger v. Alpha Cash Buyers, LLC*,
 2022 WL 562761 (N.D. Tex. Feb. 24, 2022)......................................................8

*Hunsinger v. Dynata LLC*,
 2023 WL 2377481 (N.D. Tex. Feb. 7, 2023)..........................................10, 14, 17

*Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*,
 535 F.3d 359 (5th Cir. 2008) ..........................................................................11

*In re Katrina Canal Breaches Litig.*,
 495 F.3d 191 (5th Cir. 2007) ............................................................................2

*Land Title Co. of Dallas v. F.M. Stigler, Inc.*,
 609 S.W.2d 754 (Tex.1980)..............................................................................14

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
 780 F.3d 1101 (11th Cir. 2015) ........................................................................15

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014).........................................................................................17

*Lucas v. Monitronics Int'l, Inc.*,
 2020 WL 6440255 (S.D. Ohio Nov. 3, 2020)...................................................15

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992).....................................................................................16, 17

*Old Republic Ins. Co., Inc. v. Fuller*,
919 S.W.2d 726 (Tex.App.—Texarkana 1996, writ denied)..................................14

*Roberts v. Driskill Holdings, Inc.*,
2000 WL 301195 (Tex. App.—Austin Mar. 23, 2000, no pet.) .............................11

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976)................................................................................................17

*Spivey v. Robertson*,
197 F.3d 772 (5th Cir. 1999) ...............................................................................2

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)..............................................................................................16

*Sterling v. Securus Techs., Inc.*,
2020 WL 2198095 (D. Conn. May 6, 2020).........................................................15

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019) ...............................................................................18

*Sw. Bell Tel. Co. v. Iverson*,
2012 WL 652040 (N.D. Tex. Feb. 6, 2012)...........................................................3

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)............................................................................................16

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981) ...............................................................................17

**Statutes**

47 U.S.C. § 227......................................................................................................6, 9

Tex. Bus. & Com. Code §302 .................................................................................15, 16

**Other Authorities**

47 C.F.R. § 64.1200 ...............................................................................................7, 8

Fed. R. Civ. P. 8(a)(2)..............................................................................................1

Fed. R. Civ. P. 12(b)(1)...........................................................................................16

Restatement (3d) of Agency § 1.01, cmt. c.............................................................11

Pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, Defendant Hufsey Home Services, Inc. d/b/a One Hour Air Conditioning and Heating (Hufsey) files this motion to dismiss the original complaint filed by Kelly Pinn (Pinn) for failure to state a claim for relief and for lack of federal subject matter jurisdiction.

## I.    Introduction

Plaintiff Kelly Pinn f/k/a Kelly Robinson (Pinn) is a serial plaintiff.  She has filed at least a dozen lawsuits alleging violations of the Telephone Consumer Protection Act of 1991 (TCPA)— and the state law equivalents—against various defendants across the nation. Exhibit 1; Doc 13 at PageID 76-214.[1] In this case, Pinn alleges that Hufsey violated the TCPA under 47 U.S.C. § 227 and 47 C.F.R. § 64.1200 and Texas Business and Commerce Code §302.101—the Texas analog of the TCPA—by making telephone calls to her phone number, which is registered on the National Do-Not-Call Registry.  Plaintiff, however, fails to plead any facts to plausibly support her claims.

In her complaint, Plaintiff alleges conclusory and contradictory allegations against Hufsey, which do not trigger liability. Specifically, Pinn does not plausibly allege that (1) the phone calls she received were initiated by Hufsey, or on its behalf; (2) the calls were automated or prerecorded; (3) she received more than one violative call; (4) Hufsey engaged in telemarketing or telephone solicitations; or (5) any conduct by Hufsey was negligent, willful, or made knowingly.  Pinn also fails to sufficiently plead the traceability and redressability elements of constitutional standing.

## II.    Argument & Authorities

### A. Legal Standards

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 "does not require

---

[1] Hufsey requests the Court take judicial notice of these repeated filings. FED. R. CIV. P. 201(c)(2); Exhibit 1.

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.". *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

### B. Pinn makes conclusory and contradicting allegations that prevent this Court from drawing a reasonable inference that Hufsey is liable for the conduct alleged

In her complaint, Pinn makes many inconsistent, conclusory, and threadbare allegations. Doc. 1. Pinn alleges that she "received a total of at least 5 automated calls from Defendants as part of a telemarketing campaign." Doc. 1 at PageID 5, ⁋ 25. She further alleges that those five automated calls "were all sent from a call center identifying itself as 'US Saving Center,' 'US Home Improvements,' or some other variation thereof." *Id.* Pinn also alleges she received all the alleged calls on her "residential"[2] telephone at 817-903-XXXX.

First, Pinn fails to plausibly allege that Hufsey is related to, sponsored by, or affiliated with any entity named US Saving Center, US Home Improvements, or any similar name. Rather, the only name associated with Hufsey is "One Hour Air Conditioning & Heating," the name under which Hufsey does business and which Pinn included in the style of the case.

Second, Pinn makes myriad contrary allegations about the number and nature of the alleged phone calls. For example, although Pinn alleges she received five automated calls, she only identifies four. Doc. 1 at PageID 5-7, ⁋⁋ 25-38.

On November 3, 2023, Pinn asserts she received the first call from a "spoofed"[3] caller at telephone number 817-838-8424. Doc. 1 at PageID 6, ⁋ 28. But Pinn fails to allege that this phone

---

[2] In Pinn's numerous other lawsuits, she alleges she does not have a landline and her telephone number is for a cellphone line.

[3] The term "spoofing" refers to a process in which a caller obscures the telephone number from which a call originates and replaces it with a different, "spoofed" number so the Caller ID system will interpret the call as

number belongs to, is used by, or was spoofed by Hufsey.  Pinn further fails to provide any factual basis that the call was initiated by Hufsey.  In fact, Pinn does not allege that the caller identified themselves as either an employee or agent of Hufsey.

During that call, Pinn contends that "the caller wanted to sell the Plaintiff various home improvement services and provide an estimate for these services." *Id.*  But Pinn provides no details about what specifically the caller offered to sell or how the offers relate to Hufsey.  Pinn also alleges that "realizing the illegal nature of the call, the caller refused to proceed further, instead stating that the Plaintiff's number was on the 'do not call list' and to 'have a nice day.'" *Id*. Pinn's allegations suggest that the caller was a live person and not automated: only a human could have "wants," make "realizations," "refuse" to proceed, and specify that Pinn's number was on the "do not call" list.

On November 8, 2023, Pinn claims she received a second call from "another 'spoofed' caller ID" with phone number 817-692-3091. Doc. 1 at PageID 6, ¶ 30.  Pinn, likewise, does not allege that this number belongs to, is used by, or was spoofed by Hufsey. She also fails to allege this call was initiated by Hufsey or that the caller identified themselves as either an employee or agent of Hufsey.  Regarding the content of the call, Pinn wholly fails to allege that the caller said anything about Hufsey or made a sales offer on its behalf. Pinn merely alleges that the caller used a "nearly identical script [as the November 3, 2023 call] that uniquely started with 'did you know Christmas is coming up?" *Id.* Pinn provides no information on how this call was automated or how the "script" of this call was "nearly identical" to the November 3, 2023 call.[4]  Finally, Pinn alleges

---

originating from the "spoofed" number. *Sw. Bell Tel. Co. v. Iverson*, 2012 WL 652040, at *1 n.1 (N.D. Tex. Feb. 6, 2012).

[4] Plaintiff provides no information on the "script" of the first November 3, 2023 call. Rather, she describes general topics—home improvement services and an estimate for these services—ostensibly discussed on the call.

that *the caller* later disconnected the call, which suggests the call was with a person and not automated. *Id.* at ⁋ 31.

On November 16, 2023, Pinn claims she received a third call from a different phone number (409-271-2491).  Doc. 1 at PageID 6, ⁋ 33. She does not allege that this call was spoofed or that the number belongs to, or is used by, Hufsey.  She likewise fails to allege that the call was initiated by Hufsey or that the caller identified themselves as either an employee or agent of Hufsey.  Pinn alleges that this caller also used a "nearly identical script" but provides no additional information, including about any sales offers from Hufsey or on its behalf. *Id.* Instead, the only information Pinn alleges about this call is that she "was told that she would receive a call back from a local contractor with an estimate."  *Id.* at ⁋ 34. Pinn does not allege that the caller told her she would receive a call from *Hufsey*, only from a generic "local" contractor.

Pinn's allegations that this third phone call was automated are likewise contradictory.  Pinn claims that this phone number is one of the numbers "identified as [a] robocaller[]"on NoMoRobo at https://nomorobo.com/lookup/409-271-2491.  Doc. 1 at PageID 6, ⁋ 27.  But the website she furnished in her complaint provides a link to an audio recording from a call with a *live* person who identifies himself as "Jack from *US Home Improvements*."  Thus, Pinn's own allegation supports a finding that the third call was not automated but rather with a live person from US Home Improvements—and not Hufsey.

On November 17, 2023, Pinn asserts that the fourth—and final call—came from an entirely different spoofed telephone number at 817-543-7617.  Doc. 1 at PageID 7, ⁋ 35.  This call, as she claims, had the same "'Christmas is coming up' script as the other calls." *Id.* Pinn, however, does not provide any additional information.  She does not contend that the telephone number belongs to, is used by, or was spoofed by Hufsey.  She also fails to allege that the call was initiated by

Hufsey or that the caller identified themselves as either an employee or agent of Hufsey. Rather, she claims that "during this call . . . [she] was *directly transferred* to a representative of Defendant Hufsey." *Id*. at ⁋ 36. Pinn fails to indicate how she was transferred or if she requested the transfer. This is the first time Pinn alleges she spoke to anyone at Hufsey. But Pinn fails to describe the details of the call, what was discussed, the name of the Hufsey representative, or whether Hufsey attempted to sell her anything.

Finally, Pinn avers that "subsequent to the calls . . . *Plaintiff attempted to contact Defendant Hufsey* to ascertain why she was getting unwanted and illegal telemarketing calls to her number on the Do Not Call Registry." Doc. 1 at PageID 7, ⁋ 37.  Pinn does not indicate *how* she attempted to contact Hufsey or if it was by phone, mail, or email.  Pinn then alleges that "*[i]n response* [to Pinn's attempts to contact Hufsey], Hufsey's Vice President of Headquarter Operations, John Weeks, stated that [Hufsey was] *not responsible for the calls that were transferred or attempted to be transferred to [Hufsey]* and that they hired 33 Mile radius d/b/a EverConnect to generate leads." Doc. 1 at PageID 7, ⁋ 38. Pinn fails to describe how Hufsey responded or if it was even by telephone. Pinn also fails to allege that Hufsey engaged in any telemarketing efforts in response to her communications.  Accordingly, Pinn fails to plausibly plead that Hufsey initiated any of the four live calls, facilitated the transfer of Pinn to a Hufsey representative, or engaged in any telemarketing activities.

## C.  Pinn fails to plausibly state a claim under 47 U.S.C. § 227(b) or 47 CFR § 16.1200

Section 227(b) of the TCPA makes it unlawful for any person 'to make any call (other than a call made for emergency purposes or made with the *prior express consent* of the called party) using any *automatic telephone dialing system or an artificial or prerecorded voice* . . . to any telephone number assigned to a . . . cellular telephone service for which the called party is charged for the call,' or 'to *initiate any telephone call* to any *residential telephone line* using an *artificial*

*or prerecorded voice* to deliver a message without the prior express consent of the called party.'"

47 U.S.C. § 227(b) (emphasis added).

47 C.F.R. § 16.1200(d) provides:

> No person or entity shall *initiate* any *artificial or prerecorded-voice* telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call *for telemarketing purposes* to a *residential* telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d) (emphasis added).

First, Pinn has not plausibly plead that Hufsey initiated[5] any of the calls. Pinn admits that on the single call where she spoke to a Hufsey representative, it was only after she was "transferred" from the originating call. Doc. 1 at PageID 7, ⁋ 36. She also admits that *all* her subsequent communications with Hufsey were in response to her contact attempts by unknown means.[6] *Id.* at ⁋⁋ 37-38.

Second, Pinn does not plausibly allege that the calls she received were artificial or prerecorded. In fact, Pinn makes no reference to the terms "artificial" or "prerecorded." She also does not allege that the calls she received originated from an "automatic telephone dialing system" or "autodialer," which are terms of art with a very specific definition.[7] Even if Pinn had alleged the use of an ATDS, "[s]imply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim." *Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 WL 10486988, at *3 (N.D. Tex. Nov. 2, 2017) (Lynn, Chief J.).

---

[5] Initiating a phone call is recognized to mean that the Defendant "takes the steps necessary to physically place a telephone call." *Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019).

[6] By contacting Hufsey directly and asking it questions, Pinn expressly consented to Hufsey's responses.

[7] The terms automatic telephone dialing system (ATDS) and autodialer mean equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. 47 C.F.R. § 64.1200(f)(2); *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021).

Contrary to her allegations that the calls were "automated," Pinn describes conversations and interactions one would have with human callers. Doc. 1 at PageID 6, ℙ 28 ("the caller *wanted* to sell Pinn various home improvement services and provide an estimate for these services. However, *realizing* the illegal nature of the call, *the caller refused* to proceed further, instead *stating* that the Plaintiff's number was on the "do not call list" and to "have a nice day"); *Id.* at ℙ 31 ("the caller disconnected"); *Id.* at ℙ 34 ("during this call, the Plaintiff was *told* she would receive a call back from a local contractor with an estimate"); *Id.* at ℙ 36 ("Plaintiff was directly transferred to a *representative* of Defendant Hufsey"). These exchanges were neither impersonal nor generic and do not suggest the use of an ATDS. *Hunsinger v. Alpha Cash Buyers, LLC*, 2022 WL 562761, at *5 (N.D. Tex. Feb. 24, 2022) (Fitzwater, J.) (finding the Court could reasonably infer that the "direct and personal nature" of the correspondence meant the correspondence was "neither impersonal nor generic," which is an indicator of ATDS use).

Third, Pinn fails to plausibly assert any factual basis that Hufsey engaged in any telemarketing purposes.[8] The regulations only apply to "person[s] or entit[ies]" that engage in "telemarketing purposes." 47 C.F.R. § 64.1200(d). Pinn never alleges what the parties discussed on the call. Doc. 1 at PageID 7, ℙ 36. And Pinn makes no allegations that she was encouraged to engage in any purchase, rental, or investment by Hufsey.

Finally, by its plain terms, §16.1200(d) prohibits telemarketing calls made to "a residential telephone subscriber." Although Pinn alleges that the telephone number is a residential phone line, she alleges in numerous previously filed lawsuits that she does not have a landline telephone

---

[8] The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. 47 C.F.R. § 64.1200(f)(13).

8

number and that her primary telephone is a cellphone. Thus, her complaint falls outside a plain

reading of the statute and must be dismissed.

### D. 47 U.S.C. § 227(c) is not triggered because Pinn did not receive more than one call from Hufsey and Pinn does not allege Hufsey made any solicitations

Section 227(c)(5) of the TCPA provides:

> A person who has received *more than one telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions.

47 U.S.C. § 227(c)(5) (emphasis added).

The FCC's rulemaking authority under section 227(c) extends only to unwanted telephone

solicitations directed at "residential telephone subscribers." 47 U.S.C. § 227(c)(1). Thus, suit may

only be brought by those who receive multiple violative calls on their residential phone lines.

Pinn has not plausibly alleged that she received more than one call from Hufsey.  Rather,

she alleges that all calls were "sent from a call center identifying itself as 'US Saving Center,' 'US

Home Improvements,' or some other variation thereof." Doc. 1 at PageID 5, ⁋ 25. Taking her

allegations as true, none of the calls were initiated by Hufsey.

Even if the Court determines that the November 17, 2023 call (the only call in which Pinn

was *transferred to* and spoke with a representative of Hufsey) was in violation of § 227(c), Pinn

does not satisfy the requirement that she receive <u>more than one</u> violative call.  Doc. 1 at PageID 7,

⁋ 36; 47 U.S.C. § 227(c)(5). Even still, Pinn fails to describe the nature of the conversation with

Hufsey or to allege that Hufsey solicited her to purchase any of its services.

Because Pinn has not plausibly alleged a claim for a violation of § 227(c), this Court should

dismiss her claim. *Cunningham v. TechStorm,  LLC*, 2017 WL 721079, at *2-3 (N.D. Tex. Feb.

23, 2017) (Lynn, Chief J.) (granting motion to dismiss where plaintiff only alleged that "he received one or more phone calls to his cellphone, made by an automatic telephone dialing system . . . that at least one message was left, accompanied by a brief period of dead-air time and multiple playback errors" and that the defendant "attempted over 100 phone calls, as can be the case in other instances").

### E. Pinn fails to plead facts supporting direct or vicarious TCPA Liability

Under the TCPA, a plaintiff must establish that a defendant is either directly or vicariously liable for any violations. *See Cunningham v. Politi*, 2019 WL 2519568, at *5 (E.D. Tex. Apr. 30, 2019) ("Theories of direct and vicarious liability are both cognizable under the TCPA"). Direct liability is found when an entity "initiates" a phone call or "takes the steps necessary to physically place a telephone call." *Hunsinger v. Dynata LLC*, 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023). At the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that initiated the phone calls. *See id.*

#### i. Pinn fails to plead facts supporting Hufsey's direct liability

Pinn alleges that she received automated calls from "a call center identifying itself as 'US Savings Center,' 'US Home Improvements,'" or some variation thereof—not Hufsey. Doc. 1 at PageID 5, ⁋ 25. It is only during one call that Plaintiff alleges she was *transferred* to a Hufsey representative. Doc. 1 at PageID 7, ⁋ 36. But Pinn does not make any allegations regarding how the transfer occurred or if she asked to be transferred. Thus, Pinn does not allege that Hufsey initiated or took the steps to physically place the phone call. *See Politi*, 2019 WL 2519702 at *7 (dismissing case where plaintiff failed to "establish any factual basis, beyond mere speculation" to support his contention that calls were made by or on behalf of the defendant). The only other contact with Hufsey was initiated by Pinn herself. Doc. 1 at PageID 7 ⁋ 37. Accordingly, Pinn

fails to provide any facts in support of the assertion that Hufsey is directly liable under TCPA, and this claim should be dismissed.

### ii.  Pinn fails to plead facts supporting Hufsey's vicarious liability

A seller "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Callier v. SunPath Ltd*., 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020) (citation omitted). To prove the existence of an agency relationship, the principal must have "both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Id*. (quoting *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp*., 535 F.3d 359, 364 (5th Cir. 2008)).

"Vicarious liability is liability placed upon one party for the conduct of another, based solely upon the relationship between the two." *Crooks v. Moses*, 138 S.W.3d 629, 637-638 (Tex. App.—Dallas 2004, no pet.); s*ee* Restatement (3d) of Agency ("Restatement") § 1.01, cmt. c ("[T]he concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person."); *see also Christiana Tr. v. Riddle*, 911 F.3d 799, 803 (5th Cir. 2018) ("An essential element of agency is the principal's right to control the agent's actions . . . The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.") (quoting Restatement §1.01, cmt. f(1)).

"[T]hree factual elements must exist in order to create an agency relationship: (1) the manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the understanding of the parties that the principal is to be in control of the undertaking. *Roberts v. Driskill Holdings, Inc*., 2000 WL 301195, at *2 (Tex. App.—Austin Mar.

23, 2000, no pet.). Three theories of agency could support a claim for vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification. *Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019).   Though "the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Id.* at *3, n.3 (dismissing TCPA claims premised on vicarious liability at the pleading stage for failure to sufficiently allege facts establishing an agency relationship with or control over an agent). "[T]he mere possibility that a defendant may be vicariously liable is not sufficient to state a claim for relief, and pleading facts that are merely consistent with liability is not enough." *Id.* at *5.

Pinn merely employs conclusory allegations and various legal buzzwords—without supporting facts—to suggest that EverConnect as Hufsey's "agent" placed the call at-issue. Doc. 1 at PageID 3, ⁋ 9 ("EverConnect contracted *with Hufsey* to place the illegal telemarketing calls nationwide"); *Id.* at PageID 8, ⁋⁋44-61. Plaintiff does not allege any facts supporting a plausible inference that Hufsey directed or controlled any calling party's conduct or had any power to give interim instructions, as is required to plead actual agency. *See, e.g., Cunningham v. Lifestyles*, 2019 WL 4282039, at *5. Pinn argues that because Hufsey "was interested in hiring a lead generator . . . it hired EverConnect." Doc. 1 at PageID 8, ⁋⁋ 45-46. Pinn then leaps to the conclusion that because it hired EverConnect, "Hufsey controlled the day-to-day activities of EverConnect by providing the specific criteria for the leads it would accept and required its vendors, including EverConnect, to adhere to those criteria." *Id.* at ⁋ 47; ⁋ 53. But Pinn has not sufficiently alleged that EverConnect was even the entity to place the calls. *See* Doc. 1 at PageID 5, ⁋ 25 (alleging that the automated calls "were all sent from a call center identifying itself as 'US Saving Center,' 'US Home Improvements,' or some other variation thereof").

12

These conclusory allegations are not sufficient to permit the Court to infer the call was initiated by an entity acting with any authority from Hufsey.  Pinn does not allege that Hufsey instructed any party on how, when, and who to call, (including instructing a caller to call Pinn herself).  What Pinn does allege is that John Weeks—Hufsey's Vice President of Headquarters Operations—stated that Hufsey was "not responsible for the calls that were transferred or attempted to be transferred" to it and that Hufsey only "hired [EverConnect] to generate leads." *Id.* at PageID 7, ⁋ 38; *see Cunningham v. Kondaur Capital*, 2014 WL 8335868, at *3 (M.D. Tenn. Nov. 19, 2014) (concluding that Plaintiff's allegation that callers told Plaintiff they were prospecting for leads on behalf of defendant was not sufficient to show that the callers were in fact acting at the directive of or on behalf of defendant).  Nor does Pinn allege that Hufsey did or said anything to her or that she relied on such actions or statements to her detriment, as is required for a claim of apparent authority.

Pinn next alleges that "Hufsey knowingly ratified EverConnect's conduct" because Hufsey (1) "hired EverConnect without a proper investigation and did not terminate it when Hufsey was informed of EverConnect's illegal[9] calling conduct," (2) "accepted Plaintiff's lead even though Plaintiff's number was on the National Do Not Call Registry and that fact was available to Hufsey when it accepted the Plaintiff's lead," and (3) "accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her. Doc. 1 at PageID 9, ⁋ ⁋ 51-60.

"Ratification is the affirmance by a person of a prior act which when performed did not bind him, but which was professedly done on his account, whereby the act is given effect as if originally authorized by him." *Disney Enterprises, Inc. v. Esprit Fin., Inc*., 981 S.W.2d 25, 31

---

[9] Pinn fails to provide any factual information that a competent court has adjudicated Defendant's conduct and determined it was illegal.

(Tex. App.—San Antonio 1998, pet. dism'd w.o.j.).  "Ratification, in this context, is not a form of authorization, but a legal concept in agency law describing the relations between parties after affirmance by a person of a transaction done or purported to be done for him." *Id.*  "A ratification will lie when the individual for whom an act was done retains the benefits of the transaction after acquiring full knowledge of the transaction." *Id.*; *see Land Title Co. of Dallas v. F.M. Stigler, Inc*., 609 S.W.2d 754, 756 (Tex.1980). "Most caselaw interpreting the doctrine of ratification couches its discussion in the context of an existing agency relationship where the agent exceeds the scope of her authority and the principal later accepts the benefits of such act after acquiring full knowledge." *Disney Enterprises, Inc*., 981 S.W.2d at 31; *see e.g.*, *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 237 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *Old Republic Ins. Co., Inc. v. Fuller*, 919 S.W.2d 726, 728 (Tex.App.—Texarkana 1996, writ denied).

Pinn does not plausibly plead ratification. She merely alleges—without any elaboration or specific factual support—that EverConnect is an agent of Hufsey, Hufsey had an agreement with EverConnect, and that Hufsey compensates EverConnect for its lead generation. But she fails to allege any relevant facts including (1) what was the prior act, (2) who conducted the prior act on Hufsey's behalf, (3) how Hufsey "accepted" the prior act, (4) how Hufsey benefited from the prior act, or (5) that Hufsey acquired full knowledge of the transaction and how.  A sheer possibility that a third party—on Hufsey's behalf—initiated a call to Pinn does not establish an agency relationship sufficient to state a claim under the TCPA. *Dynata LLC*, 2023 WL 2377481 at *6; *see Horton v. Nat'l Republican Senatorial Comm*., 2023 WL 372066, at *5 (N.D. Tex. Jan. 23, 2023) (finding allegations "fail[ed] to plead more than conclusions and formulaic recitations of vicarious liability"). Accordingly, Pinn's claims of vicarious liability should be dismissed.

14

**F. Pinn fails to plausibly allege that the TCPA violations were negligent, willful, or made knowingly.**

Seeking treble damages, Pinn alleges—also in conclusory fashion—that Hufsey's alleged TCPA violations were "negligent, willful, and knowing." Doc. 1 at PageID 13, ⁋ 82; PageID 14, ⁋ 87. Because Pinn makes absolutely factual allegations about how Hufsey's conduct was negligent, willful, or knowing, these bare allegations are likewise insufficient under federal pleading standards and cannot survive dismissal. *See, e.g., Sterling v. Securus Techs., Inc*., 2020 WL 2198095, at *6 (D. Conn. May 6, 2020) (dismissing case where plaintiff's allegations that TCPA violations were willful or knowing were mere legal conclusions unsupported by further specific factual allegations); *Lucas v. Monitronics Int'l, Inc*., 2020 WL 6440255, at *2, n.3 (S.D. Ohio Nov. 3, 2020) (declining to award treble damages for motion for default judgment on § 227(c)(5) claim, holding that "plaintiff's conclusory allegation that [defendant's] actions were 'willful' is nothing more than a legal conclusion couched as a factual allegation" ) (citing *Twombly*, 550 U.S. at 555); *Lary v. Trinity Physician Fin. & Ins. Servs*., 780 F.3d 1101, 1107 (11th Cir. 2015) ("the bare assertion in [plaintiff's] complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true").

**G. Pinn fails to state a claim under TEX. BUS. & COM. CODE § 302.101**

Section 302.101 provides that "[a] seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." TEX. BUS. & COM. CODE §302.101(a). A "telephone solicitation" is "a telephone call *a seller . . . initiates* to induce a person to purchase, rent, claim, or receive an item." *Id. at* §302.001(7). A "seller" is "a person who makes a telephone solicitation on the person's own behalf," and a "purchaser" is "a person who . . . is solicited to become . . . obligated for the purchase or rental of an item." *Id. at*

15

§302.001(3), (5). TEX. BUS. & COM. CODE §302.061 provides that "[t]his chapter does not apply to a person engaging in a telephone solicitation that (1) is an isolated transaction; and (2) is not done in the course of a pattern of repeated transactions of a similar nature."

Pinn avers that Hufsey does not possess the registration certificate required by §302.101(a). Doc. 1 at PageID 14, ⸱ 86. But Hufsey is not required to obtain such a registration certificate because it is not a seller who initiated any calls to Pinn. *Supra* at Section C. Moreover, Pinn has not alleged that Hufsey engaged in telephone solicitation.  Even if the Court determines that the sole call in which Pinn was transferred to a Hufsey was violative, Pinn has not alleged the call was anything more than an isolated instance. Finally, Pinn has not sufficiently alleged any agency relationship. *Callier v. Nat'l United Group, LLC*, 2022 WL 20046134, at *12 (W.D. Tex. Jan. 26, 2022) (dismissing claim because plaintiff "fails to establish the plausibility of an agency relationship between [defendant] and the telemarketers making the calls . . . and never alleges that [defendant] specifically made the calls at issue"). Thus, Hufsey's motion to dismiss should likewise be granted as to this claim.

### H.  Pinn lacks standing to assert her claims

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The "irreducible constitutional minimum of standing" includes three elements: "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). Second, the injury must be causally connected to the complained-of conduct; in other words, it must be "'fairly . . . trace[able] to the

16

challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Id*. (quoting *Simon v. E. Ky. Welfare Rts. Org*., 426 U.S. 26, 41–42 (1976)) (brackets in original). And third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id*. at 561 (quoting *Simon*, 426 U.S. at 38, 43). "Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981).

"Courts reviewing TCPA claims have noted that certain 12(b)(1) challenges relate directly to the analysis of whether a plaintiff states a claim, and they have analyzed these challenges under a Rule 12(b)(6) standard". *Dynata LLC*, 2023 WL 2377481 at *4; *see Clark v. Avatar Techs. Phl, Inc*., 2014 WL 309079, at *1-4 (S.D. Tex. Jan. 28, 2014); *see also Hicks v. Alarm.com Inc.*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) ("Based on the deficiencies identified under Rule 12(b)(6), Plaintiff also fails to properly plead causation and redressability."). "[T]he existence of an agency relationship intertwines inquiries of redressability and traceability required for standing and a central aspect of any TCPA claim . . . ." *Id.*

Pinn fails to sufficiently plead the traceability and redressability elements of constitutional standing. To meet the "causation" element, the "injury in fact" must be "fairly traceable" to the defendant's conduct. *Lexmark Intern., Inc. v. Static Control Components, Inc*., 572 U.S. 118, 125 (2014); *see also Lujan*, 504 U.S. at 560-61 (an injury is not fairly traceable to the defendant if the injury complained of is "th[e] result [of] the independent action of some third party not before the court") (quoting *Simon*, 426 U.S. at 41–42 (1976)) (emphasis added). Here, Pinn fails to plead any

conduct attributable only to Hufsey (as opposed to third parties—like US Saving Center or US Home Improvements), or that Hufsey had an agency relationship with any responsible party.

Because Pinn pleads no specific facts in her complaint showing any misconduct attributable to Hufsey and has directly contradicted those facts by admitting unrelated "call centers" were responsible, her injury is not capable of being redressed by Hufsey. Enjoining Hufsey cannot prevent third parties from calling Pinn, and imposing statutory or other damages on Hufsey will not prevent further unlawful conduct of any third party who may have placed unsolicited calls to her. *See Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a *continuing injury or threatened future injury*.") (emphasis added)). Finally, because Pinn lacks standing, she likewise lacks standing to bring suit on behalf of any putative classes. Doc. 1 PageID 11, ⁋ 73; PageID 13, ⁋ 79; PageID 14, ⁋ 84.

Pinn lacks Article III standing. *See Hicks v. Alarm.com Inc*., 2020 WL 9261758 at *5 (E.D. Va. Aug. 6, 2020) ("[b]ased on the deficiencies identified under Rule 12(b)(6), Plaintiff also fails to properly plead causation and redressability" for Article III standing); *Barker v. Sunrun Inc.*, 2019 WL 1983291, at *3 (D.N.M. Apr. 29, 2019) (ruling similarly); *Freidman v. Massage Envy Franchising, LLC*, 2013 WL 3026641 at *4 (S.D. Cal. June 13, 2013) (standing lacking where no facts pleaded supporting inference of direct or vicarious liability).

## CONCLUSION

For the reasons stated above, Defendant Hufsey Home Services, Inc. d/b/a One Hour Air Conditioning & Heating respectfully requests that the Court grant its motion to dismiss, enter an order dismissing the Plaintiff's complaint with prejudice, and enter such further relief to which it may be justly entitled.

18

Respectfully submitted,

/s/*Joseph F. Cleveland, Jr.*
Joseph F. Cleveland, Jr.
jcleveland@belaw.com
Texas State Bar No. 014378900
Angélique M. McCall
amccall@belaw.com
Texas State Bar No. 24104172
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX  76102-3090
Telephone:  817/338-1700
Facsimile:   817/870-2265

ATTORNEYS FOR DEFENDANT
HUFSEY HOME SERVICES, INC. D/B/A
ONE HOUR AIR CONDITIONING &
HEATING

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record in this cause pursuant to and in accordance with the Federal Rules of Civil Procedure on February 9, 2024.

/s/ *Angélique M. McCall*
Angélique M. McCall

1666314-v2/9998-000441

19