IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| KELLY PINN,<br>Individually and on behalf of similarly situated persons,<br><br> *Plaintiff*,<br><br>v.<br><br>HUFSEY HOME SERVICES, INC. D/B/A ONE HOUR AIR CONDITIONING & HEATING AND 33 MILE RADIUS LLC D/B/A EVERCONNECT,<br><br> *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  CASE NO.: 4:23-cv-01208-Y |

**33 MILE RADIUS LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**GREENBERG TRAURIG LLP**

Christopher S. Dodrill
State Bar No. 24110696
christopher.dodrill@gtlaw.com
Alex E. Hartzell
State Bar No. 24126522
alex.hartzell@gtlaw.com
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

Lori Chang (*Pro Hac Vice*)
changl@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

**ATTORNEYS FOR DEFENDANT 33 MILE RADIUS LLC D/B/A EVERCONNECT**

## I. REPLY IN SUPPORT OF MOTION TO DISMISS

**A. The Complaint's Allegations Do Not Satisfactorily Plead Vicarious Liability.**

Pinn concedes that she "does not plead direct liability" against EverConnect. (Resp. at 7). Her claims against EverConnect thus hinge on whether she sufficiently pleads vicarious liability. To meet this burden, she must plead nonconclusory facts making it plausible that an agency relationship existed. Pinn fails to do so.

Pinn argues in her Response that an agency relationship exists between EverConnect and the actual caller – alleged "overseas call centers" (Resp. at 4-5) identified as "US Saving Centre" and/or "US Home Improvements" – by (i) mischaracterizing her Complaint's allegations and (ii) relying on allegations that are not in the Complaint. Pinn's arguments that this allegation alleges vicarious liability fail for at least two reasons.

First, Pinn contends that because Hufsey's Vice President acknowledged it hired EverConnect to place leads, a necessary implication arises that EverConnect must have contracted with the alleged overseas call center to place each of the offending calls, which she claims renders EverConnect vicariously liable. (Resp. at 4-5). The Complaint's only vicarious liability allegations focus on *Hufsey's* liability for EverConnect's conduct. (Compl. ¶¶ 44-60). Pinn alleges in her Complaint that "Hufsey's Vice President of Headquarters Operations, John Weeks, stated that they were not responsible for the calls that were transferred to attempted to be transferred to them and that they hired 33 Mile Radius LLC d/b/a EverConnect to generate leads." (*Id.* ¶ 38). But the Complaint alleges nothing about EverConnect's purported agency relationship with any call center. The Response simply invents a new vicarious liability theory that is not substantiated by the Complaint's factual allegations. This alone requires dismissal. *See Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *3 (N.D. Tex. June 13, 2023) (dismissing TCPA claim alleging vicarious liability with prejudice where plaintiff "allege[d] no facts indicating that the

[defendant principal] had any sort of control over [an alleged nonparty agent]").

Second, the Complaint's allegations do not support the Response's argument that Hufsey's investigation determined that EverConnect generated the lead at issue for these calls.[1] The Complaint alleges nothing about whether EverConnect generated the lead for the calls Pinn received. It alleges only that Pinn was told Hufsey has a contract with EverConnect to generate leads. (Compl. ¶ 38). But alleging generally that Hufsey hired EverConnect to generate leads is different from alleging that EverConnect generated each of the *specific leads* or calls alleged. The Complaint alleges the former, but not the latter.[2] All told, the Complaint lacks any facts establishing that EverConnect had an agency relationship with the overseas call centers that allegedly placed the calls to Pinn.[3]

Next, Pinn cites cases that are either distinguishable or do not support her arguments. *Birchmeier* merely acknowledges the unremarkable proposition that a party may be vicariously liable under the TCPA. *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748, at *1 (N.D. Ill. Dec. 31, 2012). Pinn argues *Cunningham* is distinguishable because when she called and spoke to Hufsey's Vice President, he purportedly confirmed that EverConnect generated the lead for the offending call. (Resp. at 6); *Cunningham*, 2023 WL 3985245, at *2–3. This distinction depends on the Response's mischaracterization of the Complaint's allegations. As discussed, the Complaint

---

[1] But even if the Complaint did allege that Hufsey performed an investigation concluding that EverConnect generated the lead at issue, the Complaint says nothing about whether EverConnect generated the leads for the other calls Pinn alleges receiving on November 3, 8, and 16.

[2] This is not the only occasion where Pinn's response attempts to smuggle in new allegations not pled in her Complaint. For instance, at page 6 of Pinn's response, she expounds upon a theory not presented in the Complaint: "There necessarily had to be some degree of control of EverConnect's call center sufficient to demonstrate agency, particularly because the call seemingly went from a call center to Hufsey without EverConnect's apparent involvement, but somehow EverConnect knew to bill Hufsey for the lead. EverConnect therefore had control over the call center because it was able to ascertain that the call took place as a verified, valid transfer and therefore bill Hufsey for it." Again, Pinn's assumptions are not supported by any facts alleging an agency relationship between EverConnect and the caller.

[3] Pinn concedes that she lacks sufficient evidence to support pleading an agency relationship. On page 9 of her Response, she acknowledges she needs discovery to "further suss out the exact agency relationship involved[.]"

does not allege that Hufsey investigated this specific call and determined EverConnect generated the lead. Even so, *Cunningham*'s discussion of vicarious liability supports EverConnect's position. It dismissed a TCPA claim when, as here, the plaintiff failed to allege facts showing the defendant had control over the entity making the call. *Id.* at *3. Similarly, Pinn's attempted distinctions of *Katz* and *Hunsinger* fail because they too depend on her mischaracterized allegation that Hufsey investigated and confirmed that EverConnect generated *this* lead. (Resp. at 7); *Katz v. Caliber Home Loans, Inc.*, 2023 WL 5311488 (N.D. Tex. Aug. 17, 2023); *Hunsinger v. Dynata, LLC*, 2023 WL 2377481 (N.D. Tex. Feb. 7, 2023).

Finally, *Callier* is distinguishable because the plaintiff there performed his own investigation to identify who was responsible for the actionable call he received, which included purchasing a health insurance policy on the actionable call, calling the National Health Insurance Marketplace to identify the seller of his policy, and in doing so, ascertaining the name of the agent who sold his policy. *Callier v. Nat'l United Grp., LLC*, 2022 WL 4088205, at *5 (W.D. Tex. Sep. 6, 2022). Pinn, by contrast, performed none of this due diligence to identify who was responsible for the specific call she received. She rests merely on being told by Hufsey that, in general, EverConnect was hired to generate leads. But *Callier* also dismissed another defendant with prejudice for whom the plaintiff failed to allege facts identifying how he knew the other defendant sold him an insurance policy. *Id.* at *3, 5, 7, 9 (dismissing claims because the plaintiff failed to "provide specific facts connecting a specific, violative phone call to the specific defendant"). The same is true of Pinn here.

B. **Pinn's Script-Similarity Argument Fails to Show She Received More than One Actionable Call from EverConnect.**

Pinn contests EverConnect's argument that she fails to plead sufficient facts showing she received more than one actionable call by highlighting three allegations supposedly enhancing the

plausibility of her allegations.

First, she argues that receiving calls from different caller IDs does not necessarily mean these calls did not originate from the same source because the outgoing numbers could be "spoofed." (Resp. at 10). The Complaint never explains what "spoofing" is or alleges facts explaining that Pinn knew that the calls she received on November 3, 8, and 17 came from "spoofed" numbers. (Compl. ¶¶ 28, 30, 35). But her Response argues that telemarketers use "spoofing" to change caller ID information so the recipient believes the call is legitimate since it purports to come from a local number. (Resp. at 10). Even assuming that telemarketers commonly "spoof" phone numbers to mask caller IDs, the Complaint's allegations give rise to nothing but rank speculation that EverConnect was behind each of the alleged calls – all of them using different caller IDs for the four separate calls alleged, and where only one of them connected Pinn to Defendant Hufsey. (Compl. ¶¶ 35-36; Resp. at 4 (confirming only the "last call complained of" was transferred to Hufsey). While it is *possible* that the same entity placed all alleged calls to Pinn, the Complaint still fails to plead facts making it *plausible* that the entity placing the calls is affiliated with and acting as an agent on behalf of EverConnect for each of those calls.

Second, Pinn argues that her allegation that the spam calls stopped after the November 17 call (which was transferred to Hufsey) helps explain why a single entity was responsible for the November 3, 8, 16, and 17 calls. (Resp. at 10). Again, while the Complaint alleges that Hufsey hired EverConnect to "generate leads," it is otherwise devoid of any allegation connecting EverConnect to the third-party call center, and the Response merely confirms there were no other calls made for Hufsey because the November 17 call was the only and "last" of the alleged calls. Thus, there was no other call that could have possibly been generated by EverConnect because according to Pinn, the calls stopped after that single November 17 call that transferred to Hufsey.

Third, Pinn argues that the November 3, 8, 16, and 17 calls utilized a similar script, which she contends suggests they originated from the same entity. (Resp. at 10). None of the cases she cites are on point.

*Lifewatch, Inc.* involved alleged violations of the telemarketing sales rule, 16 C.F.R. Part 310, not the TCPA. *FTC v. Lifewatch, Inc.*, 176 F. Supp. 3d 757, 766 (N.D. Ill. 2016). There, based on the evidence presented, the court found that Lifewatch likely provided the similar scripts containing misrepresentations. *Id.* at 767. Pinn does not allege EverConnect, let alone any other defendant, provided scripts to any callers.

*Toney* is also off-base. There, the defendant conceded that the caller made four offending calls. *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014). But EverConnect disputes that the Complaint's allegations sufficiently connect the November 3, 8, 16, and 17 calls to a single caller, as explained in its motion to dismiss. *Toney* also considered a different issue: can a plaintiff allege that multiple calls from a single entity were made with an offending purpose when the plaintiff does not answer all of them. *Id.* This issue concedes that the same entity placed all the calls. It does not address EverConnect's argument that Pinn fails to allege facts connecting the November 3, 8, 16, and 17 calls to a single entity.

*Bird* is inapt because it involved allegations that the same entity made two calls, only one of which the plaintiff answered, but the court inferred both calls came from the same entity because the calls came from the same phone number. *Bird v. Pro Star Builders, Inc.*, 2022 WL 18216007, at *2-3 (C.D. Cal. Nov. 28, 2022). Pinn alleges she received calls from different phone numbers. (Compl. ¶¶ 28, 30, 33, 35). Yet even if "spoofing"[4] were sufficient to explain that all these calls

---

[4] Pinn's response claims the "spoofing" was done to "make the numbers appear to come from local residents." (Resp. at 10). But Pinn alleges the November 16 call originated from a number with a (409) area code, which encompasses Beaumont and Galveston, Texas. *See* PUBLIC UTILITY COMMISSION OF TEXAS, Texas Area Codes – Cities & Prefixes, Area Code 409, *available at* https://www.puc.texas.gov/industry/maps/areacodes/exchangelist.aspx?ac=409 (last

originated from the same caller, Pinn still fails to plead facts connecting the caller to EverConnect.

Finally, Pinn's attempt to distinguish Judge Lynn's dismissal of her TCPA suit against Cyclebar goes nowhere. The Order could not be clearer that Judge Lynn dismissed the case because Pinn failed to allege receiving more than one phone call. *Pinn v. Cyclebar Franchising, LLC*, at *3 (N.D. Tex. Dec. 4, 2023) ("Pinn has not pleaded more than one telephone communication from Cyclebar[.]"). Pinn's argument that the dismissal was based on state-law claims removed to federal court confuses the *basis* of dismissal (lack of pleading more than one actionable call) with the *nature* of dismissal (with prejudice since this was Pinn's second attempt to sue Cyclebar on the same set of facts). *Id.*

**C.     Applying a Textualist Reading of the TCPA is the Proper Approach, and Based on the Statutory Framework and Text, the Better Reading is that Calls to Cell Phones Are Not Covered by the Private Right of Action Remedy under 47 U.S.C. § 227(c).**

Pinn advances an interpretation of the statute that directly conflicts with the plain language of 47 U.S.C. § 227(c) and established case law confirming that the TCPA distinguishes between "residential" and "cellular" phone lines, where calls to "home phones and cell phones" are "separately prohibit[ed]" under the TCPA. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 (2021). Consequently, and as ruled by various courts, the provisions of the TCPA governing *residential* phone calls do not apply to calls made to *cellular* numbers. *See, e.g.*, *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1305 (11th Cir. 2020) (construing "residential telephone line" in 47 U.S.C. § 227(b)(1)(B) to refer to landlines, in ruling that § 227(b)(1)(A)'s "prohibition on auto-dialers does not apply to residential land lines"); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014) (ruling that 47 U.S.C. § 227(b)(1)(B), which prohibits

---

visited Feb. 15, 2024). EverConnect asks the Court to judicially notice this fact. *See* Fed. R. Evid. 201; *see also Sunderland v. Chavez*, 2023 WL 2185713, at *2 (N.D. Tex. Feb. 23, 2023) (explaining government websites are judicially noticeable). Accordingly, it is not entirely correct that all numbers were "spoofed" to appear local to Pinn, who alleges she resides in the Northern District of Texas. (Compl. ¶ 5).

artificial/prerecorded calls to a "residential telephone line," does not extend to calls made to a "cell-phone number"); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013) (ruling that the TCPA's exemptions for debt collection calls "do not apply to cellular phones; rather, these exemptions apply only to autodialed calls made to land lines"); *see also Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2345 & n.3 (2020) (confirming that "the TCPA's separate restriction on robocalls to home phones" was not implicated in the appeal challenging "robocalls to cell phones").

Section 227(c) creates a private right of action for only violations of regulations that "protect *residential* telephone subscribers' privacy rights," but omits any reference to cellular telephones. *See* 47 U.S.C. § 227(c)(1) & (c)(3) (authorizing the FCC to promulgate rules "to protect residential telephone subscribers' privacy rights" by, among other things, establishing a "database to compile a list of telephone numbers of *residential* subscribers who object to receiving telephone solicitations"). Thus, considering that Congress knew of and separately regulated calls to cellular telephones, *see Duguid*, 141 S. Ct. at 1172, Congress chose not to extend the relief provided to residential telephone subscribers to cell phone users in § 227(c). *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Pinn argues that the statutory distinction between calls to cellular and residential phone lines – confirmed by the Supreme Court and many other courts[5] – is a "strained" interpretation because the term "residential telephone subscriber" should be defined by "the *actual use* of the number," such that *residential* telephone would include (and not exclude) "cellular telephone

---

[5] *See* Defendant's Motion to Dismiss (ECF No. 12) at 11-12 & n.11.

services used for personal, household purposes." (Resp. at 16-17). But applying the Webster's Dictionary definition of "residential" (as Pinn advocates, Resp. at 18) creates interpretive problems when analyzing the overall structure of the TCPA. If "residential telephone" as used in the TCPA included cell phones, the prohibition against calls made "to any residential telephone line using an artificial or prerecorded voice" under 47 U.S.C. § 227(b)(1)(B), would make superfluous the separate restriction against calls made using "an artificial or prerecorded voice" to cellular and other wireless lines under 47 U.S.C. § 227(b)(1)(A), undermining a "cardinal principle of statutory construction" that requires avoiding a construction that renders any language "superfluous, void, or insignificant." *Alaska Dep't of Envtl. Conservation v. Envtl. Prot. Agency*, 540 U.S. 461, 468 n.13 (2004) (internal quotation marks omitted); *Cooper Indus., Inc. v. Aviall Servs. Inc.*, 543 U.S. 157, 166 (2004) (courts are "loathe" to render part of a statute superfluous). Moreover, Pinn's interpretation of "residential" conflicts with the statute's use of the term, and courts have held that exemptions provided for certain calls to "residential telephone" lines do not apply to the same type of calls made to cellular phone lines.[6]

Nor is Pinn's flawed "textualist reading" resolved by reference to the definition of "residential subscriber" as a telephone subscriber "that is not a business subscriber," where Pinn maintains that "residential" phone numbers includes those used for "mixed *purposes*" (i.e., "mixed" personal and business uses). (Resp. at 17-19). Thus, Pinn's interpretation of § 227(c) is squarely at odds with the TCPA's differentiation between calls to cellular and residential phone lines, which is present throughout the statute.

---

[6] *See, e.g.*, *Osorio*, 746 F.3d at 1250 (concluding that the FCC-created exemption for calls based on an established business relationship was promulgated under the TCPA's section 227(b)(2)(B), which "permits the FCC 'by rule or order, [to] exempt [certain categories of calls] from the requirements of paragraph (1)(B) of this subsection [*i.e.*, 47 U.S.C. § 227(b)(1)(B)]'" prohibiting autodialed calls to "any residential telephone line," but the same exemption did not apply to calls to cell phone numbers under § 227(b)(1)(A)(iii) because "47 U.S.C. § 227(b)(2)(B) does not authorize rulemaking with regard to 47 U.S.C. § 227(b)(1)(A)(iii)") (brackets in original).

A proper reading of the statute compels dismissal because the TCPA does not permit a cause of action for calls to cell phone numbers on the DNC registry. The Supreme Court instructs that "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). If a statute does not reflect "an intent to create not just a private right but also a private remedy," then "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.*

The FCC's 2003 order extending DNC protections to wireless subscribers does not create a cause of action for cell phone users. Unlike the original rule under 47 C.F.R. § 64.1200(c), which tracks the statute in restricting telephone solicitations to *residential telephone subscribers*, the FCC's 2003 order allowing cell phone users to register on the DNC list was not predicated on 47 U.S.C. § 227(c). Instead, the FCC expressly relied on § 227(b)(1) (restricting autodialed and prerecorded calls to cell phone numbers) to create a separate rule, codified at 47 C.F.R. § 64.1200(e), extending DNC protections to cell phone users. 2003 FCC Order ¶ 36 (finding it "more consistent" to construe § 227(b)(1)(A)(iii) as "allow[ing] wireless subscribers to benefit from the full range of TCPA protections"). But Pinn does not assert a claim under § 227(b), and nothing in the 2003 order establishes a private right of action under § 227(c) for calls made to cell phone numbers – nor could it, because "regulations cannot create causes of action enforceable in federal court." *Thurman v. Med. Transp. Mgmt.*, 982 F.3d 953, 956 (5th Cir. 2020) ("federal rights are created by Congress, not agencies of the Executive Branch, as the Supreme Court has affirmed on various occasions," citing *Sandoval* and *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)).[7]

---

[7] Cases cited by Pinn that have allowed DNC claims to proceed based calls to cell phones relied on the FCC's 2003 expansion to wireless subscribers, but do not conclude that Congress "clearly and unambiguously," *Thurman*, 982 F.3d at 955, created a private right to enforce a violation of the FCC order. *See Jackson v. Direct Bldg. Supplies LLC*, 2024 WL 184449, at *4-5 (M.D. Pa. Jan. 17, 2024); *Hunsinger v. Alpha Cash Buyers, LLC*, 2022 WL 562761, at *2

In other words, while the FCC's 2003 order may permit cell phone users to add their numbers to the DNC list, calls to registered cell phone numbers do not give rise to a claim for statutory damages under 47 U.S.C. § 227(c)(5). Congress restricted that particular remedy to "violation[s] of the regulations prescribed under this subsection," which specifies in § 227(c)(1) that such rules are to "protect residential telephone subscribers' privacy rights," and does not include cell phone users. The 2003 FCC order, codified at 47 C.F.R. § 64.1200(e), cannot be deemed as a rule prescribed by § 227(c) because the FCC's authority to promulgate regulations cannot exceed the power granted under that subsection. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213-14 (1976) ("The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is 'the power to adopt regulations to carry into effect the will of Congress *as expressed by the statute*.'" (emphasis added)). Thus, the 2003 FCC Order allowed wireless subscribers to register on the DNC, but did not otherwise expand the scope of the private right of action under 47 U.S.C. § 227(c).

Lastly, the Hobbs Act does not bar this Court from applying the straightforward construction of § 227(c) because the Court need not consider or review the validity of the 2003 FCC Order to conclude that the private remedy created under § 227(c) does not extend to calls to cell phone numbers on the DNC list. Even accepting Pinn's allegations as true, the mere "fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche 12 Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Dismissal is therefore required because allowing Pinn to maintain a claim under § 227(c) for calls made to a cell phone user would deviate from the clear text of the statute.

---

(N.D. Tex. Feb. 24, 2022); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 202 (D. Mass. 2021); *Sagar v. Kelly Auto. Grp., Inc.*, 2021 WL 5567408, *14-15 (D. Mass. Nov. 29, 2021). Neither the Fourth nor Ninth Circuits specifically addressed whether calls to a "residential telephone subscriber" encompass calls to a cell phone user.

Dated: February 23, 2024

Respectfully submitted,

**GREENBERG TRAURIG LLP**

*/s/ Christopher S. Dodrill*
Christopher S. Dodrill
State Bar No. 24110696
christopher.dodrill@gtlaw.com
Alex E. Hartzell
State Bar No. 24126522
alex.hartzell@gtlaw.com
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

Lori Chang (*Pro Hac Vice*)
changl.@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

**ATTORNEYS FOR DEFENDANT 33 MILE RADIUS LLC D/B/A EVERCONNECT**

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2024, I filed the foregoing through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Christopher S. Dodrill*
Christopher S. Dodrill