**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| KELLY PINN, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>HUFSEY HOME SERVICES, INC. D/B/A ONE HOUR AIR CONDITIONING & HEATING AND 33 MILE RADIUS LLC D/B/A EVERCONNECT,<br><br>       Defendants. | Case No. 4:23-cv-01208-Y |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**
**HUFSEY HOME SERVICES, INC.'S MOTION TO DISMISS**

I.   CONTENTS

**II.    Tables of Authorities** ................................................................................................. iii

**III.   Introduction** ........................................................................................................... 1

**IV.   Background** ............................................................................................................ 1

**V.    Legal Standard** ..................................................................................................... 2

**VI.   Argument** .............................................................................................................. 3

  A.   Prior to filing this Complaint, Defendant Hufsey admitted facts which give rise to the inference of liability. ..................................................................................................... 3

  B.   Plaintiff does not bring suit under the automated call provisions of 47 U.S.C. § 227(b). Rather, she sues under the Do Not Call Registry provisions of 47 U.S.C. § 227(c). Thus, Defendant's contention that the Plaintiff has allegedly failed to plead the automated nature of the calls is irrelevant for this case. .................................................................................. 8

  C.   Plaintiff plainly received more than one call "by or on behalf of" Hufsey as the statute requires. Hufsey is therefore vicariously liable for EverConnect's conduct through any one of the commonly-accepted principles of agency. .......................................................... 9

  D.   Treble damages under the TCPA are subject to jury determination. As such, it is inappropriate to dismiss a prayer for treble damages at the pleadings stage. .......................... 18

  E.   Defendant misreads and misrepresents the provisions of the Texas Business and Commerce Code which are also subject to vicarious liability. ................................................. 19

  F.   This Court has subject matter jurisdiction because Plaintiff has plausibly alleged the illegal calls were traceable to Hufsey's conduct and will be favorably redressed by a decision against Hufsey. ............................................................................................................ 21

**VII.  Conclusion** ........................................................................................................... 25

## II.   TABLES OF AUTHORITIES

**Cases**

*Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792 (W.D. Pa. Aug. 1, 2022) ................................................................................................................ 8

*Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768 (11th Cir. 2011) ............................... 18

*Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016) ........................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 3

*Benton v. United States*, 960 F.2d 19 (5th Cir. 1992) .................................................................. 2

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019) ........................ 18

*Budde v. Ling-Temco Vought, Inc.*, 511 F.2d 1033 (10th Cir. 1975) .......................................... 24

*Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 4088205 (W.D. Tex. Sept. 6, 2022) ...................................................................................................................... 11

*Clough v. Highway Auto. Pros LLC*, No. SACV2300107CJCJDEX, 2023 WL 4291826 (C.D. Cal. May 23, 2023) ................................................................................................... 23

*Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687 (E.D. La. Feb. 6, 2013) .......................................................................................................................... 6

*Cunningham v. Kondaur Cap.*, No. 3:14-1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014) ............................................................................................................................... 17

*Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019 WL 4282039 (E.D. Tex. Aug. 8, 2019) ......................................................................................... 16, 17

*Cunningham v. Rapid Response Monit. Servs.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017) ......... 12

*Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217 (D. Mass. 2014) .............................. 18

*Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016) .............................. 11, 13

*Grant ex rel. Fam. Eldercare v. Gilbert*, 324 F.3d 383 (5th Cir. 2003) .................................. 3, 23

*Guadian v. Progressive Debt Relief, LLC*, No. EP-23-CV-00235-FM, 2023 WL 7393129 (W.D. Tex. Nov. 8, 2023) ............................................................................................. 19

*Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017 U.S. Dist. LEXIS 55023 (M.D. Fla. Apr. 10, 2017) ................................................................................................................. 12

*Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046 (M.D.N.C. July 22, 2020) .................................................................................................................. 14, 15

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019)............................ 15

*Holloway v. Pagan River Dockside Seafood*, 669 F.3d 448 (4th Cir. 2012) ............................... 22

*Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481 (N.D. Tex. Feb. 7, 2023) ...................................................................................................................... 17

*In re DISH Network*, 28 FCC Rcd. 6592-93 ...................................................................... 9, 10, 11

*In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141 (D. Idaho 2011) ............ 14

*Johnson v. Palmer Admin. Servs., Inc.*, No. 622CV00121JCBKNM, 2022 WL 17546957 (E.D. Tex. Oct. 20, 2022) ......................................................................................................... 20

*Jones v. Mut. of Omaha Ins. Co.*, Civil Action No. ELH-22-905, 2022 U.S. Dist. LEXIS 203313 (D. Md. Nov. 7, 2022) ........................................................................................ 16

*Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137 (W.D. Pa. June 29, 2016)11

*Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409 (E.D.N.Y. 2013).............. 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) .................................................... 22, 24

*M.D.C.G. v. United States*, 956 F.3d 762 (5th Cir. 2020) ............................................................ 23

*Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451 (N.D. Ill. Sep. 7, 2016) ...................................................................................................................... 11

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) ................................................................. 2

*Port Elevator Brownsville v. Gutierrez*, 198 Fed. Appx. 362 (5th Cir. 2006)............................. 11

*Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551 (E.D. Pa. 2019) ............... 18

*Salaiz v. Beyond Fin., LLC*, No. EP-23-CV-6-KC, 2023 WL 6053742 (W.D. Tex. Sept. 18, 2023) ...................................................................................................................... 20

*Stemke v. Marc Jones Constr., LLC*, No. 5:21-CV-274-30PRL, 2021 WL 4340424 (M.D. Fla. Sept. 23, 2021) ............................................................................................................. 7

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506(2002)....................................................................... 6

*United States v. Dish Network LLC*, 256 F. Supp. 3d 810 (C.D. Ill. 2017)................................. 12

*Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741 (5th Cir. 2010) .......................................................... 3

**Statutes**

47 U.S.C. § 227(b) ............................................................................................................... 8, 10

47 U.S.C. § 227(c) ............................................................................................................... 9, 10

FED. R. CIV. P. 12(b)(1) ............................................................................................................ 2

FED. R. CIV. P. 8 .............................................................................................................. 3, 5

TEX. BUS & COM. § 302 ................................................................................................... 19, 20

U.S. CONST. art. III ........................................................................................................... 21, 23

**Other Authorities**

Complaint, ECF No. 1 ..................................................................................................... passim

Motion to Dimiss Complaint, ECF No. 17 ......................................................................... 1, 6, 10

RESTATEMENT (THIRD) OF AGENCY ................................................................................ 11, 12

### III.   INTRODUCTION

Defendant Hufsey Home Services, Inc., doing business as One Hour Air Conditioning & Heating (Hufsey or Defendant)'s motion to dismiss must be denied because the Plaintiff has pled sufficient facts to demonstrate Hufsey's vicarious liability for the calls at issue. Specifically, Plaintiff has pled that she received the five calls at issue, which all used nearly identical scripts, in an unbroken line of a "warm transfer" calls, ultimately leading to Defendant Hufsey. Prior to filing suit, and at Plaintiff's request, Hufsey investigated those calls. Hufsey made various admissions regarding the calls to Plaintiff, including that it hired Defendant EverConnect to generate leads on its behalf. At the pleadings stage, such statements are plainly sufficient to give rise to an inference of liability.

Defendant's litany of other attempts to dismiss this case, including those premised on the patently incorrect basis that Plaintiff is pleading violations of the TCPA's automated call provisions, the false contention that Plaintiff did not receive more than one call from or on behalf of Hufsey or that she was solicited on the calls, and attempts to pick off Plaintiff's Business and Commerce Code claims and attack her standing, fare no better.

As so many other courts have done in other TCPA cases involving vicarious liability and unlawful calls to cell phones on the Do Not Call Registry, this case should be allowed to proceed to discovery.

### IV.   BACKGROUND

The original complaint in this matter was filed on December 1, 2023 against the moving Defendant Hufsey. (ECF No. 1). After requesting an extension, Defendant filed its motion to dismiss on February 9, 2024. (ECF No. 17). In it, the Defendant makes a myriad of arguments. First, despite the fact that Defendant Hufsey investigated the calls and admitted it hired

EverConnect to make calls, it contends that the Plaintiff has inadequately pled facts which support Hufsey's liability for the calls. Second, it perplexingly argues that the Plaintiff does not adequately plead that she received calls in violation of the automated call provisions of the TCPA, which is obvious because the Plaintiff does not sue under those provisions. Relatedly, it argues that Plaintiff has not alleged that she received more than one call from the Defendant or that it is vicariously liable for the calls. Finally, it advances three underdeveloped arguments attacking the Plaintiff's prayer for treble damages, her Texas Business and Commerce Code claims, as well as her standing. This response follows.

## V.   LEGAL STANDARD

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Defendant appears to mount a facial challenge to the Plaintiff's complaint. A facial challenge goes to the sufficiency of the pleading itself, and in such a motion, the court must take the allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. *Id.* If, however, the defendant mounts a factual challenge, the defendant must submit "affidavits, testimony, or other evidentiary materials" supporting the lack of subject matter jurisdiction. The burden then shifts to the Plaintiff to demonstrate that the court has subject matter jurisdiction, including through additional affidavits, testimony, and other evidence of the plaintiff's own. But even when a factual attack is involved, as with a motion under Rule 12(b)(6), a motion under 12(b)(1) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). Under either type of challenge, "It is

2

inappropriate for the court to focus on the merits of the case when considering the issue of standing." *Grant ex rel. Fam. Eldercare v. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003).

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (cleaned up). The requirement that a plaintiff "show" that he is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

## VI.   ARGUMENT

A.   *Prior to filing this Complaint, Defendant Hufsey admitted facts which give rise to the inference of liability.*

As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendant's involvement in the calls with sufficient specificity

to give rise to the inference of direct or vicarious liability. She has done so because she has pled facts, including the scripting and caller ID information transmitted on the calls, to give rise to the inference that the calls all originated from the same place, namely, EverConnect. (Compl. ¶ 25, 28, 30, 33, 35). The Plaintiff has clearly alleged that Hufsey is liable for the conduct at issue and has made allegations that support the fact that EverConnect made those calls on Hufsey's behalf as part of an *en masse* campaign, such as because, with respect to the fifth call, the call was transferred, *on the very same call*, to Defendant Hufsey. (Compl. ¶ 36, 46). A subsequent investigation by Hufsey's director of operations, John Weeks, confirmed that the call originated from EverConnect and was transferred to Hufsey, who hired them. (Compl. ¶ 38).

As its first basis for dismissing the claims against it, Defendant Hufsey conclusorily claims that the Plaintiff makes "inconsistent, conclusory, and threadbare allegations" in her complaint which Defendant claims are insufficient to state a claim. This is plainly not so, as a cursory review of the complaint will demonstrate. Furthermore, the Defendant's motion misstates the Plaintiff's burden at the pleadings stage entirely. Based on the facts pled in the notice-pleading of the Plaintiff's complaint, as further bolstered by additional evidence in the Plaintiff's possession alluded to in her complaint, it is fair for this Court to infer that Hufsey is liable for the conduct alleged to permit this matter to proceed to discovery. This Court should not hold that a defendant had no involvement and is not liable for a call it admits was knowingly transferred to it by a company it hired to generate leads by making telemarketing calls.

In a TCPA case, the Plaintiff also need not prove that the party sought to be held liable illegally used or held itself out to the public under any fake name. Nor will the Defendant's general denials here suffice to show that there is some question as to whether or not Hufsey may be liable for the calls. The Defendant, in essence, adopts in its motion the classic "I didn't do it"

4

defense, but styles it instead as an attack on the Plaintiff's pleading and perceived self-proclaimed "contradictions" therein. This Court cannot credit the Defendant's simple denial of involvement, particularly because the Defendant's very own contentions themselves are contradictory. Moreover, even if that was the standard (which it is not), it doesn't matter that Hufsey claims that it does not use such fake names as "US Saving Center" nor do differences in call outcomes at all matter for pleadings purposes. The calls were evidently placed by the same entity, either EverConnect or call center, and Plaintiff initially spoke with an agent of EverConnect. And the Plaintiff has alleged that, with respect to the fifth call, the call was transferred, *on the very same call*, from such agent to Defendant Hufsey. (Compl. ¶ 36).

And once the call was transferred to an agent of Hufsey (who admitted it hired EverConnect), that agent confirmed that they were with Hufsey and also used their DBA name, One Hour Air Conditioning & Heating. (*See* Compl. ¶ 36). And after the calls were made and an investigation into them carried out, Hufsey's director of operations emailed the Plaintiff from Hufsey's website. (Compl. ¶ 38). When Plaintiff later asked as to where the call came from or why the Plaintiff was transferred, Hufsey investigated and determined that it purchased the Plaintiff's lead, and therefore the live-transfer call, from EverConnect. (*Id.*). Although Plaintiff is not required to plead facts surrounding this investigation or the content of the emails and communications, Mr. Weeks emailed the results of this investigation to the Plaintiff. (*Id.*).

Nothing about the calls Plaintiff received is contradictory or at all demonstrates the calls were anything but sales calls, but even if Plaintiff's pleading might be so misinterpreted, that also misstates the Plaintiff's burden entirely. The Rules demand only that the Plaintiff provide simply a "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Therefore, the Defendant's demands that the Plaintiff specifically state

what "the caller offered to sell or how the offers relate to Hufsey," (Br. at p. 9) is completely without support in the plain language of the Federal Rules. The Plaintiff pled that the calls were made to solicit home improvement services and more specifically ventilation services. (Compl. ¶ 28, 36). And the Plaintiff has pled how the calls relate to Hufsey: she received five calls with identical scripts, one of which was *directly transferred* to Hufsey, and after such transfer, the calls stopped. Such allegations are plainly sufficient to give Hufsey notice of the claims against it and how the calls were linked as among themselves, including to Defendant Hufsey.

Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red-herring argument that the Plaintiff has failed to state a claim because she has allegedly not pled sufficient facts demonstrating liability. But that's a "red herring" that begs the question "who did, then?" and begs the question as to how the fifth call, which used nearly identical scripts to the other four calls, ended up directly transferred to and how Plaintiff interacted with Hufsey's employees. *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013).

Requiring a putative TCPA plaintiff to allege more than basic facts giving rise to liability, such as requiring the entity be disclosed by name at the outset of an illegal telemarketing call or pleading various similar such nuances as the Defendant seems to require (Br. at p. 9, citing no one), would eviscerate the TCPA's protection and would simply allow defendants to run rampant with all manner of anonymous and unidentified calls. Indeed, although identification of a caller is a legal requirement, neither Hufsey, EverConnect, nor the vast majority of illegal telemarketers abide by it and instead use fake, generic names like "US Savings Center" on the

6

initial sales pitch because disclosing their true identity at the outset would cause bad will for their brand and generate a multitude of public consumer complaints. In litigation that affirmatively identifies them as the bad actors, like here, they then play dumb and claim that they have no connection with such falsely, and illegally, named entities and callers.

Other courts have rejected nearly identical tactics. For example, in *Stemke v. Marc Jones Constr., LLC*, No. 5:21-CV-274-30PRL, 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021), the Middle District of Florida stated in a case on all fours with this one:

> Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls.

> For example, Sunpro argues that Plaintiff fails to "support" a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls. To the extent Sunpro disputes that it directly placed the calls, Sunpro may take discovery on this matter and argue the issue at the dispositive motion stage.

Taking all factual inferences in the Plaintiff's favor, as the Court must do now, the Plaintiff's allegations are sufficient. As Judge St. Eve, prior to being appointed by President Trump to the Seventh Circuit Court of Appeals, held in a TCPA case denying a similar motion to dismiss:

> Sempris does not dispute that Quality initiated four calls to Toney in December 2012, but contends that Toney "cannot plausibly allege that the three unanswered calls she purportedly received were initiated by Quality for the purpose of marketing Sempris's Budget Savers membership program, because Toney does not allege--and cannot allege-- that she has any personal knowledge of what the content of those calls would have been." . . . Sempris submits that Quality "just as easily could have been calling Toney to market the goods or services of another company it contracts with, for the exclusive purpose of confirming Toney's Stompeez order, or for a different purpose altogther" and that "Toney's assertion that that Quality made the three unanswered calls for the purpose of marketing Budget Savers is nothing more than rank speculation."

The court disagrees. Toney has alleged that she received and answered a call from Quality in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from Quality. The content and timing of the fourth call allows the court to draw a reasonable inference that Quality made the first three calls to market Sempris's services.

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (cleaned up). The same reasonable inference can be made here, as Ms. Pinn received a variety of calls that used the same exact scripting on behalf of the Defendant.

The Defendant's standard provides a perverse incentive for a caller to conceal their identity by making it impossible for any plaintiff to prove a claim against the defendant at the pleadings stage based on a lack of information and evidence. Luckily for consumers who receive unwanted calls, this is not the standard. *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation.").

B.     *Plaintiff does not bring suit under the automated call provisions of 47 U.S.C. § 227(b). Rather, she sues under the Do Not Call Registry provisions of 47 U.S.C. § 227(c). Thus, Defendant's contention that the Plaintiff has allegedly failed to plead the automated nature of the calls is irrelevant for this case.*

The TCPA contains may provisions prohibiting various types of wrongful, anti-consumer calling conduct. Among those are prohibitions against using an "automatic telephone dialing system" or an "artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). The Defendant's motion discusses various portions of the calls and how they were not automated in a manner to constitute a violation of § 227(b). That's correct: the calls Plaintiff received were not prerecorded calls and nowhere in the complaint does the Plaintiff allege as much. Rather, the Plaintiff alleges

a single count under Section § 227(c)(5), relating to calling a number on the National Do Not Call Registry. (Compl., First Cause of Action, p. 13).

C.    *Plaintiff plainly received more than one call "by or on behalf of" Hufsey as the statute requires. Hufsey is therefore vicariously liable for EverConnect's conduct through any one of the commonly-accepted principles of agency.*

Hufsey contends that it cannot be held liable because the Plaintiff does not plead sufficient facts which would support an inference that the Plaintiff received more than one call "by or on behalf of" Hufsey in a twelve-month period, as required by 47 U.S.C. § 227(c)(5). Plaintiff's reasoning for why this provision is satisfied in this case applies with equal force here and sounds almost entirely in a vicarious liability analysis, which Defendant also employs.

With respect to these intertwined arguments, the Plaintiff is merely required to demonstrate that she received "more than one call" made by *or on behalf of* Hufsey encouraging the purchase of, or investment in, property, good or services. *Id.* And contrary to Defendant's claims, under this plain language, Hufsey need not *initiate* the call itself in order for a call to be made on Hufsey's behalf. It may nevertheless be vicariously liable for such conduct. As explained in the complaint, the FCC has instructed that sellers such as Hufsey may not avoid liability by outsourcing telemarketing to third parties, such as EverConnect:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up). The FCC all but

9

rejected the Defendant's very argument here in holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

And the Plaintiff has more than adequately pled the calls were solicitations. As a preliminary matter, this Court must accept as true Plaintiff's statement that the calls were all made to sell home contractor services. (Compl. ¶ 18, 28, 60). And on the call that was transferred to Hufsey, the Plaintiff spoke with multiple Hufsey representatives who tried to sell her on home heating and air conditioning services. As such an argument so plainly runs contrary to the Plaintiff's pleadings, this Court can reject offhand the Defendant's contention that the Plaintiff has not pled that the calls were made to solicit or purchase any Hufsey services. (Br. at 14).

The Plaintiff has also provided sufficient facts which allow this Court to draw the inference that the five calls all came from the same place, EverConnect, because they all bore common indicia and were all made to sell the Plaintiff home services like ventilation services. (Compl. ¶ 25). Similarly, because the fifth call was *directly transferred* to Hufsey, it follows that, if the other calls had proceeded to the transfer stage, they, too, would have been transferred to Hufsey because Hufsey hired EverConnect to make calls on its behalf and only send it interested customers. (Compl. ¶ 45). The Plaintiff does more than merely conclusorily plead an agency relationship. Instead, she pleads how EverConnect fits into Hufsey's strategy for getting new customers: by orchestrating an *en masse* telemarking campaign for Hufsey. (Compl. ¶ 46).

What's more, such intertwined facts are sufficient to resolve the related issue of vicarious liability by leading to inferences demonstrating the existence of an agency relationship under any one of the three commonly accepted agency principles of actual authority, apparent authority,

10

and ratification. Of course, Plaintiff contends that it is inappropriate for this Court to conduct a vicarious liability analysis at the pleadings stage. But even if this Court were to dive into a vicarious liability analysis, Hufsey would be liable under all three, even if Hufsey did not directly commit the violative conduct or even place the calls at issue. *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 4088205, at *6–7 (W.D. Tex. Sept. 6, 2022) (imposing vicarious personal liability on an individual insurance agent who was responsible for writing an insurance policy based on an illegal call initiated by an unnamed caller).

An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01 [hereinafter RESTATEMENT]. "[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification. *Klein v. Just Energy Grp., Inc*., No. CV 14-1050, 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016). The existence of an agency relationship is normally one for the trier of fact to decide. *See Port Elevator Brownsville v. Gutierrez*, 198 Fed. Appx. 362, 366 (5th Cir. 2006). Moreover, "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016). And a 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of [agency] relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.

11

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT § 2.01. Actual authority may be given *expressly*, such as when the principal states how an agent is to act, or *impliedly*, such as when an agent acts "in a manner in which [the] agent believes the principal wishes the agent to act . . . in light of the principal's objectives and other facts known to the agent." Here, the Plaintiff alleged that Hufsey generally hired EverConnect to orchestrate an *en masse* telemarketing campaign on its behalf and then send Hufsey interested clients. (Compl. ¶ 45, 46). This is sufficient to demonstrate at least Hufsey's implied actual authority over EverConnect's conduct. *See Cunningham v. Rapid Response Monit. Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) (holding as proper for discovery questions peculiar to the "course of the parties' dealings and the generally expected course of business").

Actual agency "does not require the principal to specify the singular acts for which his or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017 U.S. Dist. LEXIS 55023, at *21 (M.D. Fla. Apr. 10, 2017). "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing RESTATEMENT § 2.02(1)).

For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is not expected to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the

12

putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997. Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant directed an agent's calls by alleging facts merely giving rise to an inference that the defendant was involved in the sales practices and marketing procedures, including impliedly. *See Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery."). Here, Plaintiff alleges that Hufsey is liable for EverConnect's conduct because:

> • Hufsey knowingly and actively accepted direct call transfers that originated through the illegal telemarketing calls from EverConnect. (Compl. ¶ 36);
>
> • Hufsey had day-to-day control over EverConnect's actions, including dictating the percentage of calls it would accept from persons on the DNC. (Compl. ¶ 28, 36, 48, 54); and
>
> • Hufsey also gave interim instructions to EverConnect by providing the volume of calling and leads it would purchase. (Compl. ¶ 47, 48, 49, 50).

And here, the Plaintiff has pled even more facts to infer an agency relationship, or at the very least, facts sufficient to permit discovery into any vicarious liability issues. For starters, the fact that the Plaintiff was *not* transferred on the first four calls for various reasons can lead this Court to infer that this was because the transfers did not meet the criteria *Hufsey* provided to EverConnect. (Compl. ¶ 47). For example, because the Plaintiff's number was on the Do Not Call Registry and was not transferred on that basis at least once (but was later transferred), this can permit the Court to infer that Hufsey instructed EverConnect to aim for a certain percentage of DNC numbers to non-DNC ones. (Compl. ¶ 28, 29, 54, 55, 59). Similarly, if Hufsey was in immediate need of jobs, this Court can infer that Hufsey instructed EverConnect to hang up on callers expressing less interest as "tire kickers." (Compl. ¶ 49). Accordingly, the Plaintiff was likely not transferred during the first four calls because the Plaintiff did not meet the criteria *set by Hufsey*, not because Hufsey had no involvement in such calls. (Compl. ¶ 47, 49).

Accordingly, the Plaintiff has sufficiently alleged that Hufsey is vicariously liable for

13

EverConnect's conduct under actual authority because it contracted with EverConnect to make calls and controlled EverConnect's conduct in the above ways. (Compl. ¶ 38, 46, 57).

Beyond going a long step to demonstrating agency, such allegations are plainly a feather in the Plaintiff's cap when it comes to alleging Hufsey's continual involvement in the calls, even those where Plaintiff was *not* transferred. But even focusing entirely on the fifth call, the circumstances Plaintiff has pled surrounding that call also gives rise to the inference of an agency relationship. Hufsey does not address or explain why it now claims it had nothing to do with the calls Plaintiff got, which were made with identical scripts, one of which was *directly* transferred to Hufsey's employees, without Plaintiff's involvement. Hufsey also does not explain how it was able to investigate calls it now claims it had no involvement in and identified EverConnect as the entity it hired to generate leads and place the calls at issue. Presumably, a company getting a call that was supposedly transferred in from some rando would not have such information or know that it *paid* that person, EverConnect, another fact demonstrating agency.

But even if this Court were to hold that the Plaintiff has insufficiently pled facts giving rise to actual authority at the pleadings stage, it can nonetheless conclude there is agency under alternative theories of apparent authority or ratification. Apparent authority "arises when a third-party reasonably believes that the agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011). Apparent authority can even exist even where, unlike here, a putative principal does not communicate directly with a consumer. *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *8 (M.D.N.C. July 22, 2020) (cleaned up) ("Although Keller Williams is not alleged to have made any statements directly to Hayhurst, it is not required to do so. Rather, its manifestations must be

14

traceable to it even if it did not make them directly to Hayhurst. And its manifestations may take many forms."). "Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016) (holding sellers ratified telemarketers conduct by accepting the benefits of the unlawful calls in TCPA case).; RESTATEMENT § 4.01(1) cmt. d. ("Ratification does not require a pre-existing formal agency relationship."). As the Ninth Circuit held in another TCPA case, "Ratification may create an agency relationship when none existed before [because] the acts are done by an actor . . . who is not an agent but pretends to be." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019).

These aforementioned facts also demonstrate at the very least ratification, if not actual or apparent authority, because it shows that Hufsey knowingly accepted the benefits of the calls EverConnect placed on Hufsey's behalf and *directly transferred* to Hufsey without Plaintiff's involvement. (Compl. ¶ 36). Furthermore, Hufsey did not terminate EverConnect when informed of EverConnect's illegal calling conduct, further showing ratification. (Compl. ¶ 57). What's more, the *only* legally cognizable entity disclosed on the call was Hufsey, which would make it more than reasonable for the Plaintiff to believe that Hufsey authorized EverConnect to make the telemarketing calls, especially when it later disclosed EverConnect's involvement as the only other company involved in the telemarketing calls the Plaintiff received. *Cf. Hayhurst*, 2020 WL 4208046, at *8 (holding that manifestations of an agency relationship take many forms).

Discovery will also permit the Plaintiff to uncover any additional third parties which *may* have been involved in the calls and argue as to the respective liability between themselves and Defendants. At the very least, this Court should nevertheless conclude that the facts pled here give rise to the inference of some agency relationship and permit discovery. *Rapid Response*, 251

F. Supp. 3d at 1199 ("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery."). The District of Maryland denied a similar motion in a TCPA case in *Jones v. Mut. of Omaha Ins. Co.*, Civil Action No. ELH-22-905, 2022 U.S. Dist. LEXIS 203313 (D. Md. Nov. 7, 2022) (cleaned up), holding:

> As noted, pursuant to Rule 12(b)(6), Mutual of Omaha contends that plaintiff fails to state a claim because she does not plausibly allege that defendant is either directly or vicariously liable for the calls at issue. Although Mutual of Omaha would not be directly liable for the calls, it may be vicariously liable if an agency relationship existed between the defendant and the third party. At this juncture, Mutual of Omaha's Motion turns on whether plaintiff has adequately alleged facts sufficient to support a claim of vicarious liability.

> Plaintiff has made a prima facie showing of an agency relationship based on actual authority . . . plaintiff has alleged that she received calls from an unidentified third-party telemarketer hired to sell branded products of another company who had control over the telemarketer's practices with respect to selling its products. Specifically, Jones alleges that the third party "was required to promote Mutual of Omaha's products[.]" Plaintiff also alleges that during the "solicitation", Mutual of Omaha's insurance services "were promoted." Moreover, she was then transferred to Eric Chambers, who identified himself as an employee of Mutual of Omaha. *Id.* ¶ 26. . . . .

> At the motion to dismiss stage, plaintiff need only make a prima facie showing of an agency relationship. Therefore, at this stage of the proceedings, Jones need not demonstrate that Mutual of Omaha actually controlled the manner and means of the telemarketing campaign; rather, evidence of Mutual of Omaha's "'*right* to control' the campaign will suffice." Viewing the allegations in the light most favorable to plaintiff, Jones has sufficiently alleged that Mutual of Omaha is vicariously liable based on an agency theory.

This case is nothing like the *Cunningham* cases cited by the Defendant. For example, in *Cunningham v. Lifestyles Dev., LLC*, the plaintiff alleged that a company called RCI was responsible for *directly* placing calls he received because the vacation property advertised on the call was listed on RCI's website. No. 419CV00006ALMCAN, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019). In recommending dismissal of the case on *direct liability* grounds (*not* vicarious liability grounds), Magistrate Judge Nowak specifically pointed out that the Plaintiff did not allege that RCI initiated the call but rather that the "agent he spoke with represented that he was calling on behalf of Embassy Suites." *Id.* at *3. And Judge Nowak also found no

16

vicarious liability because no factual allegations were made supporting a finding that RCI had control over the caller identifying itself as calling from Embassy Suites for a property listed on RCI's website. *Id.* at *5. The Court nevertheless granted leave to amend in *Lifestyles*. *Id.* at *6.

Similarly, in *Cunningham v. Kondaur Cap.*, the same plaintiff failed to make *any* factual allegations that the defendant was vicariously liable for the conduct alleged and only made the conclusory statement that vicarious liability existed. No. 3:14-1574, 2014 WL 8335868, at *7 (M.D. Tenn. Nov. 19, 2014). This case is also unlike *Horton* or *Hunsinger v. Dynata LLC*, where the plaintiffs made formulaic, conclusory allegations, such as that the caller was "an agent for Dynata." No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *6 (N.D. Tex. Feb. 7, 2023).

As described above, the Plaintiff does not simply make conclusory allegations stating that there is an agency relationship between Hufsey and EverConnect as in the cases cited by Defendant. Rather, the Plaintiff points to *specific facts*, outlined above, which can lead this Court to infer the existence of an agency relationship as between Hufsey and EverConnect, including direct control via the direction of transfer criteria, knowledge of such transfers, and direct access to each respective entities' billing and similar systems, including the ability to directly transfer calls to Hufsey and Hufsey to pay EverConnect for a lead and mark it as sold. (Compl. ¶ 38, 25, 36, 48, 49, 55). Because the Plaintiff has done so, the matter should proceed.

Adopting the Defendant's motion to dismiss on an alleged inadequate pleading of vicarious liability requires the Court to adopt a false and unproven premise: that Hufsey had nothing to do with the calls alleged and is the wrong defendant entirely merely because it hired EverConnect. But even if this court were to assume *arguendo* that Hufsey committed none of the illegal conduct directly as alleged in the Plaintiff's complaint and EverConnect acted with no authority from Hufsey, a fact which is plainly contradicted by the fact that Hufsey admits it

17

spoke with the Plaintiff and hired EverConnect, such an allegation is not properly the subject of dismissing the complaint for failure to state a claim because it raises a factual dispute not properly brought at the pleading stage. The matter should unquestionably proceed to discovery.

D.      *Treble damages under the TCPA are subject to jury determination. As such, it is inappropriate to dismiss a prayer for treble damages at the pleadings stage.*

Courts across the country routinely hold that whether or not a defendant's conduct under the TCPA was knowing and/or willful such as to subject the defendant to treble damages thereunder is a genuinely disputed issue of material fact that precludes the application of summary judgment and rather requires the jury to determine, as required under the Constitution. *See, e.g.*, *Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 570 (E.D. Pa. 2019); *Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 424 (E.D.N.Y. 2013); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 227 (D. Mass. 2014); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 983 (N.D. Cal. 2019).

There can be no question that the Plaintiff has made an adequate showing at the pleadings stage of facts which, if proven as true, would necessitate the application of treble damages. The Plaintiff has not simply stated that she is matter-of-factly entitled to treble damages as in the other cases cited by the Defendant. Importantly, under the TCPA, treble damages are *not* punitive but rather are compensatory. As such, the Plaintiff must only prove to a jury willful or knowing conduct – that is, that the defendant knew that calls were being placed. *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 779 (11th Cir. 2011). The defendant need not even know that the alleged conduct was unlawful in order to support such a finding. *Id.*

And here, the Plaintiff has plainly demonstrated facts which, if proven as true, demonstrate that Hufsey knew that EverConnect was placing calls on its behalf. As described

above, these facts include the evident control Hufsey had over EverConnect's calling conduct, including accepting and rejecting ratios of calls *it knew* were or were not on the Do Not Call Registry and calls *it know* met or did not meet certain criteria. Similarly, Hufsey evidently had access to systems which could notify EverConnect that it had a valid lead and thereby pay EverConnect for the sale. Finally, the calls were evidently directly transferred to Hufsey – a fact of which Plaintiff and Hufsey's agents were acutely aware. Accordingly, there can be no question that the Plaintiff has pled sufficient facts at the pleadings stage to permit the jury's imposition of treble damages based on their determination of the nature of the conduct as being knowing and willful, a fact which is firmly in their provenance.

   E. *Defendant misreads and misrepresents the provisions of the Texas Business and Commerce Code which are also subject to vicarious liability.*

   Defendant further challenges the applicability of the Texas Business and Commerce Code's registration requirements in this case on the misinformed basis that, because Defendant is merely vicariously liable under the TCPA, it does not qualify as a "seller" under the Code. Its reading holds that if a seller does not *directly* place a call, it is not required to register under the Code. That reading rests upon a fundamental misunderstanding of Section 302.101.

   In *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-CV-00235-FM, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023), report and recommendation adopted, No. EP-23-CV-00235-FM, 2023 WL 8242475 (W.D. Tex. Nov. 28, 2023), the Western District of Texas was presented, just as here, with a motion to dismiss claim under Section 302.101 on the basis that the ultimate "seller" of the services utilized a third party to make telephone solicitations and was therefore not a "seller" under Section 302.101's explicit text. That case was on all fours with the one at bar and rested on an identical argument. In denying the defendant's motion, Court held,

"federal common law principles of agency apply here, too, and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller." Similarly, the Eastern District of Texas reached a nearly identical conclusion in *Johnson v. Palmer Admin. Servs., Inc.*, No. 622CV00121JCBKNM, 2022 WL 17546957, at \*9 (E.D. Tex. Oct. 20, 2022), report and recommendation adopted, No. 6:22-CV-00121, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022), in holding that sufficient pleading of vicarious liability of the plaintiff's TCPA claims was also sufficient for the purposes of giving rise to a claim for agency under Section 302.101. It explained, "For reasons already discussed, this argument fails as Plaintiff has presented sufficient factual allegations at this stage for the Court to infer the existence of a principal-agent relationship between Palmer and Vehicle Services and impute the alleged conduct of Vehicle Services to Palmer." *Id.*

Furthermore, the Code's explicit text supports the aforementioned inevitable conclusion. Section 302.002 of the Code provides that "a person makes a telephone solicitation if the person *effects or attempts to effect* a telephone solicitation." Tex. Bus & Com. § 302.002. Judge Cardone of the Western District of Texas has used this language as additional support in denying yet another motion to dismiss on the same grounds, namely that "telemarketers—rather than Defendant—called Plaintiff." *Salaiz v. Beyond Fin., LLC*, No. EP-23-CV-6-KC, 2023 WL 6053742, at \*5 (W.D. Tex. Sept. 18, 2023). Judge Cardone concluded, "Pursuant to this plain language . . . the Court finds Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls." *Id.*

Finally, this Court cannot credit Defendant's self-serving, conclusory statement that the calls were an "isolated instance." The pleadings in this case are plain that the calls at issue were not isolated. The Plaintiff received five calls. The callers initially lied about their identities to

20

conceal their conduct. They knew and admitted that they were calling numbers on the Do Not Call Registry but continued to call. The calls were transferred to Hufsey with Hufsey fully knowing that it hired EverConnect to generate leads. These facts and others as pled in the complaint and which will be developed through discovery could lead a reasonable jury to determine that the calls were not isolated. If Defendant wishes to present evidence why it feels the calls were "isolated," despite having been caught red-handed with its hands in the lucrative cookie jar of illegally-sourced leads, it is free to do so to the jury.

> F.    *This Court has subject matter jurisdiction because Plaintiff has plausibly alleged the illegal calls were traceable to Hufsey's conduct and will be favorably redressed by a decision against Hufsey.*

As explained above, there are two types of challenges to subject matter jurisdiction: facial challenges and factual challenges. The Defendant's motion does not state whether it mounts a facial or a factual jurisdictional challenge to the Plaintiff's complaint. However, as the Defendant has not submitted an affidavit or other evidence in support of its argument that this Court lacks subject matter jurisdiction, the Defendant is evidently attempting a facial challenge. As the Defendant is forced to admit, the standard for such a challenge is identical to that under Rule 12(b)(6). One would expect a well-developed argument aimed at striking at this Court's very power to hear this case, but it's not, Defendant dedicating only three pages to the issue in its brief in a vain attempt to hope the argument sticks and in an attempt to rack up billables.

But constitutional standing is not to be trifled with or an argument to be made without the greatest degree of respect, decorum, and attention. This Court's power to hear cases, its subject matter jurisdiction, derives from Article III of the Constitution, which limits this Court to adjudicating "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. In *Lujan v. Defenders of Wildlife*, the Supreme Court distilled the constitutional limits of Article III standing into three

distinct elements: injury, traceability, and redressability. 504 U.S. 555, 560 (1992). Defendant

challenges only the latter two elements. Importantly, the standard for traceability is that the

injury must be "*fairly* traceable to the challenged action of the defendant, and not the result of

*independent* action of some third party not before the court." *Id.* (cleaned up). Although

requiring "fair" traceability, nothing in the Constitution requires the Plaintiff to make more than

a "fair" allegation as to the defendant's identity and connection to the controversy. *Id.*

     The crux of the Defendant's argument is because the Plaintiff has not alleged any

misconduct directly attributable to Hufsey, such injury is not fairly traceable to it and cannot be

redressed by it. This contention borders on the frivolous. Indeed, as the Fourth Circuit remarked,

"If a plaintiff invoking [federal question jurisdiction] pleads a colorable claim arising under the .

. . laws of the United States . . .  deficiencies of the claim should be addressed by the other

mechanisms provided by the federal rules." *Holloway v. Pagan River Dockside Seafood*, 669

F.3d 448, 452-53 (4th Cir. 2012) (cleaned up). The Plaintiff has alleged, and this Court must

accept as true, a TCPA DNC violation in that Hufsey hired EverConnect to generate

telemarketing leads to DNC numbers on its behalf. The fifth call Plaintiff got was transferred

straight to Hufsey. Hufsey admitted that it hired EverConnect to place the calls and sell it

transferred leads. Therefore, the Plaintiff's injury is fairly traceable to Hufsey. And a decision

against Hufsey would plainly redress the Plaintiff's (and the class's) injuries in that it would

cause Hufsey to think twice before it ever hired a lead generator to make illegal calls again.

     In sum, nothing in the Constitution requires a plaintiff to plead the precise relationship

between the parties and how each precisely contributed to the Plaintiff's injury. The

constitutional requirement for an injury-in-fact sounding in federal question jurisdiction is

pleading federally proscribed conduct that is "fairly traceable" to a defendant. *Id.* at 452–53.

Pleading exact traceability cannot be a constitutional requirement for jurisdiction. From a constitutional angle, this case must not be dismissed because no part of Article III requires the Plaintiff to allege what Defendant claims is required, precise pleading of the exact nature of vicarious liability and relationship as among the various parties. That cannot be the constitutional requirement, particularly as such concepts did not exist at the time of the founding.

"It is inappropriate for the court to focus on the merits of the case when considering the issue of standing." *Grant*, 324 F.3d at 387. Therefore, even if the Defendant's argument survives constitutional scrutiny, it still fails as a legal matter, because Defendant misconstrues the purpose and elements of standing. The Defendant ignores the Fifth Circuit's counsel and makes a remarkable argument: this Court lacks Article III standing over a defendant who simply denies that it committed the conduct at issue. This argument misconstrues the purpose and elements of standing, which focus on "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id*. In essence, the Defendant repeats its thrice-repeated "we didn't do it" defense by now disguising it as a challenge to the Court's subject matter jurisdiction. But, to the extent that the "issue of [subject matter] jurisdiction is intertwined with the merits, district courts should deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56." *M.D.C.G. v. United States*, 956 F.3d 762, 768–69 (5th Cir. 2020). Indeed, the Defendant's tactic here is similar to the one addressed in *Clough v. Highway Auto. Pros LLC*, No. SACV2300107CJCJDEX, 2023 WL 4291826, at *3 (C.D. Cal. May 23, 2023). There, the plaintiff alleged that defendant (like Hufsey) was legally responsible for telemarketing calls sent by a vendor (like EverConnect). The Court rejected defendant's argument, which challenged standing on the basis of traceability. *Id.*

For identical reasons to why the Plaintiff surpasses the 12(b)(6) standard, including on vicarious liability, the allegations in the complaint demonstrate this case should not be dismissed on jurisdictional grounds, just as the Court refused to do in *Clough*. Defendant reads the words "fairly" and "independent" out of the Supreme Court's holding in *Lujan*. The Plaintiff's jurisdictional allegations derive from her investigative conduct, inferences of agency, and Hufsey's subsequent statements against interest. The contention that such investigation revealed actions of independent tortfeasors not before this Court borders on the absurd, particularly when the Defendant now attempts to use its own misconduct in illegally concealing its identity for its own benefit. The complaint's allegations are more than sufficient to demonstrate a "fair" connection between the conduct, the Defendant, and the controversy. Moreover, the allegations are sufficient to demonstrate that the Defendant was not acting "independently" of the actual tortfeasor in this case. *Lujan*, 504 U.S. at 560. If anything, Defendant was acting i*n concert* with EverConnect. And, because there is *traceability* to the Defendant, there must be *redressability* such that a judgment against Hufsey would remedy the Class's injury.

Finally, to the extent that this court remains unconvinced, it should permit jurisdictional discovery. "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). In particular, this jurisdictional discovery must focus on nearly the same vicarious liability issues, particularly the relationship between Hufsey, EverConnect, and any *potential* other call centers, including overseas call centers, which placed the calls (if not EverConnect's own overseas call centers), including such call centers' relationship with EverConnect and Hufsey. Defendant's general denial of liability couched in illusory constitutional concerns must necessarily fail.

## VII.  CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies or permit discovery as to vicarious liability or other such jurisdictional and similar issues, as necessary and reserve other determinations properly the subject of the jury.

Dated: March 1, 2024

/s/ Andrew Roman Perrong
Andrew Roman Perrong (N.D. Tex. # 333687PA)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

March 1, 2024

/s/ Andrew Roman Perrong
Andrew Roman Perrong (N.D. Tex. # 333687PA)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Class*