IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KELLY PINN INDIVIDUALLY AND ON BEHALF OF SIMILARLY SITUATED PERSONS, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:23-cv-01208-Y |
| HUFSEY HOME SERVICES, INC. D/B/A ONE HOUR AIR CONDITIONING & HEATING AND 33 MILE RADIUS, LLC D/B/A EVERCONNECT, | § § § § § § | |
| Defendants. | § § | |

**DEFENDANT HUFSEY HOME SERVICES, INC. D/B/A ONE HOUR AIR CONDITIONING & HEATING'S REPLY TO PLAINTIFF <u>PINN'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS</u>**

<u>/s/ *Joseph F. Cleveland, Jr.*       </u>
Joseph F. Cleveland, Jr.
jcleveland@belaw.com
Texas State Bar No. 04378900
Angélique M. McCall
amccall@belaw.com
Texas State Bar No. 24104172

BRACKETT & ELLIS,
A Professional Corporation
100 Main Street
Fort Worth, TX  76102-3090
(817) 338-1700
(817) 870-2265 Fax

ATTORNEYS FOR DEFENDANT
HUFSEY HOME SERVICES, INC.
D/B/A ONE HOUR AIR
CONDITIONING & HEATING

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

    A.    Pinn cites phantom allegations not contained in her Complaint and alleges completely new and contradictory matter ................................................................. 1

    B.    Pinn's conclusory and contradicting allegations prevent this Court from drawing a reasonable inference that Hufsey is liable for the conduct alleged ................................................................................................................................ 7

        i.    Pinn does not plausibly allege that she received more than one call from Hufsey or someone acting on its behalf ............................................... 8

        ii.    Pinn does not sufficiently plead vicarious liability ...................................... 8

    C.    Pinn lacks standing to assert her claims ................................................................ 10

CONCLUSION ............................................................................................................................. 11

CERTIFICATE OF SERVICE .................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                     **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 7, 10

*Associated Gen. Contractors v. California State Council of Carpenters*,
    459 U.S. 519 (1983) .............................................................................................................. 2

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*,
    869 F.3d 381 (5th Cir. 2017) ................................................................................................. 7

*Callier v. SunPath Ltd.*,
    No. EP-20-CV-00106-FM, 2020 WL 10285659 ................................................................. 10

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ................................................................................................. 1

*Dolemba v. Illinois Farmers Ins. Co.*,
    213 F. Supp. 3d 988, 997 (N.D. Ill. 2016) ............................................................................ 9

*Fernandez-Montes v. Allied Pilots Ass'n*,
    987 F.2d 278 (5th Cir. 1993) ................................................................................................. 8

*Jordan v. Flexton*,
    729 Fed. Appx. 282 (5th Cir. 2018) ................................................................................. 8, 10

*Spivey v. Robertson*,
    197 F.3d 772 (5th Cir. 1999) ................................................................................................. 1

**Statutes**

47 U.S.C. § 227(b) ....................................................................................................................... 1

47 U.S.C. § 227(c)(1) ................................................................................................................... 8

47 U.S.C. § 227(c)(5) ................................................................................................................... 8

Tex. Bus. & Comm. Code § 302.101 ........................................................................................... 8

**Other Authorities**

47 C.F.R. § 64.1200(c) ................................................................................................................. 8

Fed. R. Civ. P. 12(b)(1) ................................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 7

Defendant Hufsey Home Services, Inc. d/b/a One Hour Air Conditioning and Heating (Hufsey) files its reply to Plaintiff Kelly Pinn's (Pinn) response to Hufsey's motion to dismiss Pinn's original complaint (Complaint) for failure to state a claim for relief and for lack of federal subject matter jurisdiction.

In her response, Pinn offers more conclusory and contradictory allegations against Hufsey citing information and "facts" that appear nowhere in her Complaint. This new information—completely outside the scope of her pleading—should not be considered by the Court. In fact, Pinn's inclusion and reliance on multiple new allegations is a strong indication that Pinn's pleading is deficient. In addition, Pinn utterly fails to demonstrate how her Complaint sufficiently alleges that (1) the telephone calls she received were initiated by Hufsey or by someone acting on its behalf; (2) she received more than one call from Hufsey; (3) Hufsey engaged in telemarketing or telephone solicitations; or (4) any conduct by Hufsey was negligent, willful, or made knowingly.[1] Pinn also fails to offer any support that the traceability and redressability elements of constitutional standing are sufficiently plead.[2]

**A. Pinn cites phantom allegations not contained in her Complaint and alleges completely new and contradictory matter**

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th

---

[1] In her response, Pinn confirms that she is not asserting a claim under 47 U.S.C. § 227(b). Doc. 20 at PageID 557-58, 564-65. Accordingly, Hufsey withdraws its request to dismiss the 47 U.S.C. § 227(b) claim only.

[2] In her response, Pinn appears confused about the type of subject matter jurisdiction challenge Hufsey asserts: facial or factual. As it alleged in its motion, Hufsey contends that "Plaintiff *fails to sufficiently plead* the traceability and redressability elements of constitution standing." Doc. 17 at PageID 506 (emphasis added), 577. Hufsey does not attach any affidavits, testimony, other evidentiary material to its motion. Thus, under FED. R. CIV. P. 12(b)(1), Hufsey makes a facial challenge to Pinn's Complaint.

Cir. 2000). It is "not proper to assume the [plaintiff could] prove facts [she] had not alleged or that the defendants had violated applicable laws in ways that had not been alleged." *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Pinn's Complaint consists of 16 pages. Doc. 1. There are no attachments. *Id.* Thus, Pinn may only rely upon her 16-page Complaint to support her response. Therefore, the Court should not consider any of the new allegations in her response that are not plead in her Complaint.

For example, in the "introduction" section of Pinn's response, Pinn alleges that the calls she received were "an unbroken line of a (sic) 'warm transfer' calls." Doc. 20 at PageID 557. No where in her Complaint does Pinn make this allegation or use the term "warm transfer calls." Doc. 1. Pinn also alleges that "[p]rior to filing suit, and at Plaintiff's request, Hufsey investigated those calls." Doc. 20 at PageID 557; *see also* PageID 570 ("Hufsey also does not explain how it was able to *investigate* calls it now claims it had no involvement in . . . .") (emphasis added). Not only is this a new allegation, but it is contrary to Pinn's allegations in her Complaint that no investigation occurred, let alone at her request. Doc. 1 at PageID 9 ¶ 55 ("Indeed, Hufsey *could have* investigated if the transfers it received were on the National Do Not Call Registry") (emphasis added); *Id.* at ¶ 57 ("Hufsey hired EverConnect *without* a proper investigation") (emphasis added).

Further, citing to paragraph 38 of her Complaint, Pinn claims in her response that she alleged that "[a] *subsequent investigation* by Hufsey's director of operations, John Weeks, *confirmed that the call originated from EverConnect* and was transferred to Hufsey, who hired them." Doc. 20 at PageID 560 (emphasis added). But there is no mention of an investigation performed by Hufsey in paragraph 38 or anywhere else in her Complaint. Doc. 1. Nor is there any mention that Hufsey "confirmed the call originated from EverConnect." *Id.* Rather, in paragraph 38 of her Complaint, Pinn merely alleges:

2

> In response, Hufsey's Vice President of Headquarters Operations, John Weeks, *stated* that *they were not responsible for the calls that were transferred or attempted to be transferred to them* and that *they hired 33 Mile Radius LLC d/b/a EverConnect to generate leads*.

Doc. 1 at PageID 7 (emphasis added). Also misciting paragraph 38 of her Complaint, Pinn argues:

> And after the calls were made and *an investigation into them carried out*, Hufsey's director of operations *emailed the Plaintiff from Hufsey's website*. (Compl. ¶ 38). When Plaintiff later asked as to where the call came from or why the Plaintiff was transferred, *Hufsey investigated and determined that it purchased the Plaintiff's lead, and therefore the live-transfer call, from EverConnect.* (*Id.*). Although Plaintiff is not required to plead facts surrounding *this investigation or the content of the emails and communications, Mr. Weeks emailed the results of this investigation to the Plaintiff.* (*Id.*).

Doc. 20 at PageID 561 (emphasis added). Nowhere in her Complaint—and certainly not in paragraph 38—does Pinn allege any email correspondence occurred between Pinn and Hufsey, that Hufsey emailed Pinn any results, or that Hufsey purchased Pinn's lead or "live-transferred the call" from EverConnect.

Next, citing to paragraphs 25, 28 and 36 of her Complaint, Pinn claims in her response that she alleged that "[t]he Plaintiff pled that the calls were made to solicit home improvement services *and more specifically ventilation services*" and the calls "were all made to sell the Plaintiff services like ventilation services." Doc. 20 at PageID 562, 566 (emphasis added). Not so.

In paragraph 25 of her Complaint, Pinn only alleges:

> Despite this, Plaintiff received a total of at least 5 automated calls from Defendants as part of a telemarketing campaign, between November 3, 2023 and November 17, 2023. The calls were all sent from a call center identifying itself as "US Saving Centre," "US Home Improvements," or some variation thereof and all used identical or nearly identical scripts.

Doc. 1 at PageID 5.

In paragraph 28 of her Complaint, Pinn alleges:

3

> During the call on November 3, 2023, which came from the "spoofed" caller ID 817-838-8424 the caller *wanted* to sell the Plaintiff *various home improvement services* and provide an estimate for these services. However, realizing the illegal nature of the call, the *caller refused to proceed further*, instead stating that the Plaintiff's number was on the "do not call list" and to "have a nice day."

*Id.* at PageID 6 (emphasis added).  Pinn does not allege in paragraph 28 that the caller actually solicited any services.

In paragraph 36 of her Complaint, Pinn alleges:

> During this call, however, the Plaintiff was directly transferred to a representative of Defendant Hufsey.³

*Id.* at PageID 7.  Nowhere in paragraphs 25, 28 or 36—nor anywhere else in her Complaint—does Pinn allege that Hufsey—or someone at its direction—offered her "ventilation services."  Rather, she alleges she was offered generic "home improvement services."  Doc. 1 at ¶¶ 28, 49.

Pinn also makes the new allegation that after she spoke to Mr. Weeks, "the calls stopped." Doc. 20 at PageID 562.  Pinn does not make this allegation in her Complaint either.  Rather, she alleges "[t]he calls continued." Doc. 1 at ¶ 32.

Next, Pinn claims for the first time in her response that:

> Indeed, although identification of a caller is a legal requirement, neither Hufsey, EverConnect, nor the vast majority of illegal telemarketers abide by it and instead use fake, generic names like "US Savings Center" on the initial sales pitch because disclosing their true identity at the outset would cause bad will for their brand and generate a multitude of public consumer complaints.

Doc. 20 at PageID 562-63.  She also claims that "the callers lied about their identities to conceal their conduct." *Id.* at PageID 577.  But nowhere in her Complaint does Pinn allege that the callers lied about their identity or that the name of the entity who called her was fake or generic.  Instead,

---

³ Pinn also claims for the first time in her response that this transfer occurred "without [her] involvement." Doc. 20 at PageID 570. This allegation is also absent from her Complaint.

Pinn alleges that "[t]he calls were all sent from a call center identifying itself as 'US Saving Centre,' 'US Home Improvements,' or some variation thereof and all used identical or nearly identical scripts." Doc. 1 at ¶ 25.  Pinn does not allege in her Complaint that Hufsey is the same as, affiliated with, or related to US Saving Centre or US Home Improvements. What she alleges is that "Hufsey is liable for telemarketing calls *placed by EverConnect* and transferred to Hufsey to generate customers for Hufsey, including the Plaintiff." *Id*. at ¶ 44 (emphasis added).

Pinn then claims for the first time in her response that "*on the call that was transferred to Hufsey*, the Plaintiff spoke *with multiple Hufsey representatives* w*ho tried to sell her on home heating and air conditioning services.*" Doc. 20 at PageID 566 (emphasis added). Citing to paragraph 36 of her Complaint, Pinn also claims in her response that on this call, "the agent confirmed that they were with Hufsey and also used their DBA name, One Hour Air Conditioning & Heating." *Id*. at PageID 561. These allegations are not alleged in her Complaint.  Instead, she alleges quite the opposite: "[d]uring this call, however, the Plaintiff was directly transferred to *a representative* of Defendant Hufsey." Doc. 1 at ¶ 36 (emphasis added).  But she does not identify a single individual at Hufsey with whom she spoke.  She further alleges in her Complaint that *subsequent to the calls*, *she* contacted Hufsey and Mr. Weeks *responded* to her.  Doc. 1 at ¶ 37. She likewise never alleges in her Complaint that she was offered "heating and air conditioning services." Doc. 1 at ¶¶ 28, 49.

Pinn also claims in her response for the first time that "Hufsey had day-to-day control over EverConnect's actions, including dictating the percentage of calls it would accept from persons on the DNC." Doc. 20 at PageID 569 (emphasis added).  In support of this new allegation, Pinn cites

5

paragraphs 28, 36, 48,[4] and 54[5] of her Complaint. Pinn further alleges that Hufsey "accept[ed] and reject[ed] ratios of calls it knew[6] were or were not on the Do Not Call Registry and calls it know (sic) met or did not meet certain criteria" and Hufsey "had access to systems which could notify EverConnect that it had a valid lead and thereby pay EverConnect for the sale." Doc. 20 at PageID 575 (emphasis in original). She also newly claims in her response that Hufsey had "direct control via the direction of transfer criteria, knowledge of such transfers, and direct access to each respective entities' billing and similar systems, including the ability to directly transfer calls to Hufsey and Hufsey to pay EverConnect for a lead and mark it as sold." Id. at PageID 573.

Pinn further claims in her response—citing paragraphs 47-50[7]—that "Hufsey also gave interim instructions to EverConnect by providing the volume of calling and leads it would purchase." Doc. 20 at PageID 569. But nowhere in her Complaint does Pinn alleges that Hufsey dictated the percentage, volume, or ratios of calls it would accept from people on the do not call list: the words "percent," "percentage," "volume," and "ratio" are completely absent from her Complaint. Instead, Pinn makes conclusory allegations. Moreover, her Complaint is completely

---

[4] In paragraph 48 of her Complaint, Pinn alleges that "Hufsey would not compensate EverConnect for a call it made unless the leads met the criteria." Doc. 1 at PageID 8.

[5] In paragraph 54 of her Complaint, Pinn alleges that "[a] reasonable seller whose telemarketers are making calls would investigate the reasons why they would be calling numbers on the National Do Not Call Registry." Id. at PageID 9.

[6] Pinn also alleges for the first time that Hufsey "knew *and admitted* that it was calling numbers on the Do Not Call Registry but continued to call." Nowhere has Hufsey made such admissions, and Pinn cites to nothing.

[7] In paragraph 47 of her Complaint, Pinn alleges that "Hufsey controlled the day-to-day activities of EverConnect by providing the specific criteria for the leads it would accept and required its vendors, including EverConnect, to adhere to those criteria." Doc. 1 at ¶ 47.

In paragraph 49 of her Complaint, Pinn alleges that "[f]or example, Hufsey instructed EverConnect to ask potential customers if they had specific home improvement needs, the extent of those needs, or if they were interested in getting started immediately to eliminate so-called 'tire kickers.'" Doc. 1 at ¶ 49.

In paragraph 50 of her Complaint, Pinn alleges that "[a]s such, Hufsey controlled the content of EverConnect's telemarketing." Doc. 1 at ¶ 50.

silent regarding the alleged "access" Hufsey had to "notification," "billing," or "similar systems" for EverConnect and any "interim instructions" regarding them.

Pinn next argues in her response that the reason Pinn was not transferred to a Hufsey representative on any of the other calls was because the "transfers did not meet the criteria Hufsey provided to EverConnect." *Id.* But this statement is diametrically opposed to what she alleges in her Complaint. Doc. 1 at ¶ 28 ("[h]owever, *realizing the illegal nature of the* [November 3, 2023] *call*, the caller refused to proceed further, *instead stating that the Plaintiff's number was on the "do not call list"* and to "have a nice day"), ¶ 31 ("[d]uring this [November 8, 2023] call, the Plaintiff was attempted to be transferred yet again but the caller disconnected . . . *because the Plaintiff is on the do not call list*.") (emphasis added).

Finally, Pinn claims in her response that Hufsey "admitted that it hired EverConnect to place the calls and sell it transferred leads." Doc. 20 at PageID 578. Pinn also claims that Hufsey "admits [the call] was knowingly transferred to it by a company hired to generate leads by making telemarketing calls." *Id.* at PageID 560.  But Hufsey has not made any such admissions.

Because Pinn is only entitled to rely on the allegations she made in her Complaint, she cannot use contradictory, conclusory, and new claims asserted for the first time in her response to defeat Hufsey's motion to dismiss. Pinn's reliance on this new information proves her Complaint is not sufficiently plead.  Thus, Hufsey requests the Court grant its motion to dismiss.

### B. Pinn's conclusory and contradicting allegations prevent this Court from drawing a reasonable inference that Hufsey is liable for the conduct alleged

In ruling on an FRCP 12(b)(6) motion, the court must (1) identify allegations that, because they are merely conclusions, are not entitled to an assumption of truth, and (2) consider the factual allegations to determine if they plausibly suggest a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th

Cir.2017). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Jordan v. Flexton*, 729 Fed. Appx. 282, 284 (5th Cir. 2018); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

> **i. Pinn does not plausibly allege that she received more than one call from Hufsey or someone acting on its behalf**

To survive the motion to dismiss, Pinn must sufficiently allege that, in a twelve-month period, she received from Hufsey—or from someone acting on Hufsey's behalf—more than one unwanted telephone solicitation directed at her "residential telephone" number. 47 U.S.C. § 227(c)(1), (5). First, Pinn does not dispute in her response that the phone number where she received the calls was to her cell phone and not a "residential" telephone. Doc. 20 at PageID 557. Next, Pinn maintains her allegation that "she received five calls . . . , one of which was *directly transferred*[8] to Hufsey." *Id.* at PageID 562 (emphasis in original), 566, 557, 576. But she only received four calls. App. 1-3. Even still, Pinn has failed to allege more than one call was initiated by Hufsey or someone acting on its behalf.

> **ii. Pinn does not sufficiently plead vicarious liability**

Pinn also fails to sufficiently plead vicarious liability under 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c), and Tex. Bus. & Comm. Code § 302.101 or that the alleged violations were negligent, willful, or made knowingly. In her Complaint, Pinn alleges that "Hufsey "stated that they were not responsible for the calls that were transferred or attempted to be transferred to them." Doc. 1 ¶ 38. This allegation alone, which the Court must take as true, cuts against Pinn's argument that the calls were placed on its behalf. Further, Pinn alleges that Hufsey stated it "hired 33 Mile Radius LLC d/b/a EverConnect to generate leads." *Id.* Pinn does not allege that the calls were

---

[8] Pinn alleges in her Complaint that "*during* [the November 17, 2023] *call* . . . Plaintiff was directly transferred to a representative of Defendant Hufsey." Doc. 1 at ¶ 36 (emphasis added). Plaintiff's own allegation proves the "direct transfer" was not a separate call, but rather the same November 17, 2024 telephone call.

placed by 33 Mile Radius, LLC, EverConnect or Hufsey: she alleges they were "sent from a call center identifying itself as 'US Saving Center,' 'US Home Improvements,' or some other variation thereof." Doc. 1 at PageID 5, ¶ 25.  (Pinn again contradicts herself in her response by claiming—for the first time—that the calls were placed by "*either EverConnect* or [a] call center, and Plaintiff initially spoke with an agent of EverConnect." Doc. 20 at PageID 561 (emphasis added)).

Pinn does not allege that Hufsey hired US Saving Center or US Home Improvements to make the calls or that there is any relationship between these two entities, Hufsey, and EverConnect.  Even still, Pinn does not allege that the calls she received contained offers for Hufsey's heating and air conditioning services.  She only alleges that a caller wanted to—but did not actually—offer her generic "home improvement" services and estimates. Doc. 1 at ¶¶ 28. Even if the caller had made an offer, the caller could have been calling on behalf of any number of "local contractors" offering any variety of "home improvement services." Doc. 1 ¶¶ 28, 34.

In furtherance of her poorly-plead vicariously liability claim, Pinn cites Illinois District case, *Dolemba v. Illinois Farmers Ins. Co.*, in support of her argument that "for a TCPA claim, a plaintiff sufficiently pleads that a defendant directed an agent's calls by alleging facts merely giving rise to an inference that the defendant was *involved* in the *sales practices and marketing procedures*, including impliedly."   Doc. 20 at PageID 569; 213 F. Supp. 3d 988, 997 (N.D. Ill. 2016) (emphasis added). But *Dolemba* is easily distinguishable.

In *Dolemba*, the plaintiff alleged an agency relationship existed between the insurance carrier and its district manager when (1) the carrier's website (a) featured a picture of the manager, (b) identified him as the manager, and (c) included a message for the carrier's services, and (2) the manager's LinkedIn profile listed his 30-year career with the carrier.  *Id.* at 996.  In support of his allegations, Dolemba attached a copy of the carrier's website and the manager's LinkedIn profile

9

to the complaint. *Id.* Dolemba also alleged he saw the carrier's website, and the calls he received mentioned the carrier by name. *Id.* at 997. The other cases by Pinn are likewise distinguishable.

Here, Pinn does not allege such a close relationship between Hufsey and EverConnect. Nor does Pinn allege that Hufsey was involved in the "sales practices and marketing procedures" of EverConnect, US Saving Center or US Home Improvements. Pinn also fails to allege that any of the callers reference Hufsey or its particular services. She merely asserts that Hufsey hired EverConnect to generate leads and makes the conclusory, vague, and extremely broad allegations.[9] Doc. 1 at ¶¶ 38, 47-50, 60. These broad and conclusory allegations are not sufficient for the Court to reasonably infer Hufsey is liable for the alleged misconduct and are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. Thus, Pinn's conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts are not entitled to the assumption of truth and they cannot not prevent dismissal. *Jordan v. Flexton*, 729 Fed. Appx. at 284. Therefore, this Court should grant Hufsey's motion.

    **C.    Pinn lacks standing to assert her claims**

For the reasons stated above regarding vicarious liability, Pinn fails to sufficiently plead the traceability and redressability elements of constitutional standing. In her response, Pinn argues she has standing because "Hufsey admitted that it hired EverConnect to place the calls." Doc. 20 at PageID 578. But Pinn pleads no specific facts in her Complaint showing any misconduct attributable to Hufsey and has directly contradicted those facts by admitting unrelated "call centers" were responsible. Thus, her injury is not capable of being redressed by this Court.

---

[9] A TCPA plaintiff must allege more than that the defendants are vicariously liable because they are direct beneficiaries of the telemarketing calls. *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020).

## CONCLUSION

For the reasons stated above, Defendant Hufsey Home Services, Inc. d/b/a One Hour Air Conditioning & Heating respectfully requests that the Court grant its motion to dismiss, enter an order dismissing the Plaintiff's complaint with prejudice, and enter such further relief to which it may be justly entitled.

Respectfully submitted,

/s/*Joseph F. Cleveland, Jr.*
Joseph F. Cleveland, Jr.
jcleveland@belaw.com
Texas State Bar No. 014378900
Angélique M. McCall
amccall@belaw.com
Texas State Bar No. 24104172
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX  76102-3090
Telephone:  817/338-1700
Facsimile:   817/870-2265

ATTORNEYS FOR DEFENDANT
HUFSEY HOME SERVICES, INC. D/B/A
ONE HOUR AIR CONDITIONING &
HEATING

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record in this cause pursuant to and in accordance with the Federal Rules of Civil Procedure on April 1, 2024.

*/s/Joseph F. Cleveland, Jr.*
Joseph F. Cleveland, Jr.

1692643-v1/17397-002000

11